**Antonio SIERRA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 44869.

Court of Criminal Appeals of Texas.

May 31, 1972.

Rehearing Denied July 26, 1972.

Morehead, Sharp & Tisdel by Charles G. White, Plainview, for appellant.

Tom Hamilton, Dist. Atty., Plainview, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for assault with intent to rape. Appellant was found guilty by a jury and his punishment was assessed by the court at confinement for seventy years.

The evidence reflects that early in the morning of October 25, 1970, appellant forced his way at gunpoint into the home of Mr. and Mrs. Dale Worthan, located near Abernathy, in Hale County. After

robbing Worthan and forcing him and his children into a bedroom of the house, appellant took Mrs. Worthan into the living-room of the house and there attempted to rape her, but did not succeed because Mrs. Worthan grabbed his pistol and threw it to her husband. A fight ensued between Worthan and appellant, with Worthan pursuing appellant into the yard. Appellant fled in a pickup truck.

In his brief, appellant raises three grounds of error. In his first two grounds, he contends that the trial court erred in admitting evidence of an out-of-court identification of appellant by Mrs. Worthan.

The evidence reflects that on the Monday following the assault, Mr. and Mrs. Worthan went to the sheriff's office in Lubbock where they were shown a group of photographs but were unable to identify any of them as being a photograph of the assailant.

The Worthans returned to Lubbock on Wednesday, where they again viewed an array of photographs. Deputy Sheriff Russell testified that on the morning before the Worthans returned to Lubbock, he received a telephone call from an anonymous caller who told him to investigate appellant, because appellant had a black eye and a bandaged left hand.[1] Thereafter, Russell included a photograph of appellant in the array.

Dale Worthan testified that he had identified a photograph of appellant from the array which he was shown on the second visit to Lubbock. He further testified in the presence of the jury thusly:

"Q All right, sir. After you looked at these pictures, did you have occasion to see the Defendant in person?

"A Yes, sir.

"Q When did you see him?

"A Approximately two hours later.

"Q After looking at this person, did you form an opinion as to whether or not he was the individual that accosted you and your wife and family that night?

"A Yes, sir.

* * * * * *

"Q Where did you identify this person, or where did you see Mr. Sierra in person?

"A I saw him in the sheriff's office as he came in the door.

"Q And when was he brought in?

"A Approximately two hours after we had looked at the photographs."

No objection was made to this testimony.

Gayle Worthan likewise testified that she selected appellant's photograph and further testified in the presence of the jury:

"Q All right. After you picked out this picture, what happened?

"A Well, Charlie Bowman, captain of the sheriff's office, he got on the phone and tried to find the whereabouts of him, and the bond—they was holding his bond across the street at the bonding office, and they had sent out a guy to get him. He was behind on his bond payment, and they sent out a guy to pick him up, and so they had me to come across—

"MR. WHITE: Your Honor, object to the part of this about the bond as hearsay part.

"THE COURT: Yes, sir, I think I'll sustain that.

"Q Don't testify to anything that you don't know about from your per-

---

1. Mr. Worthan testified that he fought with the assailant and that he struck him in the eye with his fist and struck him on the left wrist with a crowbar.

sonal knowledge. If it's something somebody else told you, don't testify to that.

"A I waited in the bail bond office, and they brought him in, and I identified him.

"Q When they brought him in, where were you?

"A I was over in another part, and the girls that work there was kind of hiding me, so he couldn't see me. And then I left out a side door.

"Q What did you do then?

"A I went back over across the street and told them that that was the man, and—

"MR. WHITE: Your Honor, at this point, I have a question of law that I need to discuss with the Court at this point." (At this point, the jury was removed from the courtroom.)

Appellant's objection, which was made at this point, was as follows:

"MR. WHITE: Your Honor, I submit that this was a so-called one-man lineup, which would be in contravention of the case of Wade versus United States. And my basis for this is that since the police officers had already centered the investigation around this point and that they knew she was there, had planted her in that office, and then they subsequently arranged to have this man sent over there, that it was certainly the equivalent of a one-man lineup. And I feel like this is a—I didn't know this was coming up at this point, or I could have mentioned it in pretrial. I think much of the damage has already been done, and—

"THE COURT: Do I understand, then, that you are objecting to the testimony and making motion for mistrial at this time?

"MR. WHITE: I am making a motion for mistrial, Your Honor, on the basis I was not informed this was going to come up. I had inquired in pretrial whether or not there was going to be a lineup. Now, I realize this is not per se the formal style, but it certainly fits the principle for one.

"THE COURT: All right. The record will show your objection and motion for mistrial which was made as soon as you learned of this testimony and your first opportunity. The record will show the overruling of this motion and objection, Mr. White, and the exception of the Defendant to the ruling of the Court.

Have you any additional matter to present?

"MR. WHITE: None.

"THE COURT: All right. Bring in the jury."

Deputy Russell testified, in part, as follows, in the jury's presence:

"Q Officer, what happened after these pictures were picked out? This picture was picked out?

"A All right. Mrs. Worthan said that she would like, if possible, to see this person in person, so arrangements were made for her to view this person.

"Q What kind of arrangements were made?

"A All right. Captain Bowman, of the Lubbock sheriff's office, called the bail bond agency to ascertain where this person might be found.

"MR. WHITE: Your Honor, I object for the reason that was previously stated on this Wade versus United States.

"THE COURT: I'll overrule that objection, Mr. White.

"Q Will you please proceed.

"A All right. As I said, Captain Bowman contacted the Lubbock Bail

Bond Service and talked to the people over there, attempting to ascertain the whereabouts of the subject, the person in the photograph. They at that time advised him that he would be in in a short while; that they were bringing him in. Therefore, Mrs. Worthan went over to the bail bond office, and she was over there approximately an hour or hour and a half, and she came back to the sheriff's office, and I met her at the door, and she advised me that that was the person, definitely."

In his first two grounds of error, appellant contends that the admission of Mrs. Worthan's and Deputy Russell's testimony concerning the bond office identification of him by Mrs. Worthan was error. He contends that the bond office confrontation was a one-to-one lineup or "showup" which was illegally conducted because he was without counsel at the time. He contends that the admission of evidence concerning the confrontation was error *per se* by virtue of Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).[2]

■■ Before deciding the merits of appellant's contention, we must first determine whether the error in the admission of the testimony, if any, was properly preserved. The general rule is that an objection must be made as soon as the ground of objection becomes apparent. 1 McCormick & Ray, Texas Law of Evidence, § 23 (2nd Ed. 1956); *e. g.*, Martinez v. State, 437 S.W. 2d 842 (Tex.Cr.App.1969). It is also funda-

mental that an objection to the admission of evidence is ineffective if the same evidence has previously been admitted without objection. McCormick & Ray, supra, § 27.

■ The first problem to be resolved is whether appellant's failure to object to Dale Worthan's testimony concerning the confrontation with appellant at the sheriff's office (set forth above) precludes his later objection to Gayle Worthan's testimony. We believe that it did not. A mere chance encounter between a suspect and a witness is not within the purview of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967) and Gilbert v. California, supra. The testimony did not indicate on its face that appellant was brought into the office for the purpose of identification by Dale Worthan, or that he was pointed out to Worthan. From the state of the record at that time, it cannot be determined that appellant was even brought to the office in connection with this particular case.[3] The facts surrounding the investigation and subsequent bond office confrontation were not brought out until later in the course of the trial. An additional circumstance which leads us to conclude that the nature of the confrontation was not apparent from the testimony presented up to that point, or that appellant did not have reason to believe that the testimony was inadmissible (assuming that the confrontation was illegal), is the transcript of the hearing on appellant's motion to suppress evidence.

Prior to trial, appellant filed a "Motion to Suppress Evidence" in which he requested that the court suppress "Any evidence of

2. Appellant does not challenge the in-court identification by the Worthans. *See* United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). He objects only to the admission of evidence of the confrontation.

3. Dale Worthan testified that on the occasion of his second visit to the sheriff's office, he picked appellant's photograph from the array, but that he was only "reasonably sure" that it was a photo-

graph of appellant, and that he "didn't want to make a positive identification until I could see the person that the picture belonged to," and that, "I really wanted to see him in person, to make a positive identification." However, the testimony set forth earlier in the opinion is the only testimony in the case, up to that point, as to any confrontation. There was no testimony, up to that point, that appellant was brought to the sheriff's office in response to Worthan's request.

identification of the Accused by means of a 'lineup' as conducted by the Sheriff's Department and/or Police Department of Lubbock County, Texas, or other agencies of the State of Texas." A hearing was held on the motion, at which time the following transpired between the court and counsel for the State:

"(THE COURT) All right. Now, the next motion is a motion to suppress evidence arising out of a lineup.

Mr. Hamilton, was there any identification through a lineup in connection with—

"MR. HAMILTON (Counsel for the State): Yes, Your Honor, there was. There was a series of pictures that was presented to the complaining witnesses which was identified by both the husband and the wife as being the Defendant. He picked out the particular pictures and I did plan to introduce those pictures into evidence.

"THE COURT: But there was no lineup as such prior to the submission of the photographs?

"MR. HAMILTON (Counsel for the State): No. There's just a series of photographs that was submitted. And the person picked out of the photographs and was then later identified by the wife and the husband.

"THE COURT: Mr. White, then the record having shown that there was no lineup preliminary to the showing of these pictures, I'll rule on the admissability of the pictures at the time that comes up in the course of the trial."

Therefore, this occurrence, when coupled with the fact that the testimony, on its face, did not readily appear to be inadmissible, leads us to conclude that appellant's failure to object did not preclude his later objection.

■ We further express doubt as to whether the failure to object to evidence of a confrontation between the accused and one witness will preclude objection to the admission of evidence of a confrontation between the accused and another witness. The reason behind the holding of Gilbert v. California, supra, is that "[T]he witness' testimony of his lineup identification will enhance the impact of his in-court identification on the jury and seriously aggravate whatever derogation exists of the accused's right to a fair trial." 388 U.S. 273, 87 S.Ct. 1957. Therefore, it would appear that the failure to object to a bolstering of one witness by evidence of a lineup identification should not preclude a valid objection to the bolstering of another witness, although the earlier admission may render the later admission harmless, depending upon the circumstances of the particular case. For this reason, we do not feel that appellant's failure to object to Dale Worthan's testimony precludes his later objection to Gayle Worthan's and Frank Russell's testimony.

■ We are thus faced with the question of whether or not appellant's objection to Mrs. Worthan's testimony was timely made. We believe that it was not. The record (the relevant portion of which is set forth earlier in this opinion) reflects that, before objection upon the ground that the confrontation was illegal, Mrs. Worthan testified that it was arranged for appellant to come to the bond office, and that she went there for the purpose of identifying her assailant. She further testified that she identified appellant, and testified that she was hidden from his view. She then stated that she returned and "told them that that was the man." Only at this point was objection made on the ground that the confrontation was illegal. Objection to testimony must be made as soon as the ground of objection becomes apparent. *e. g.,* Jones v. State, 471 S.W.2d 413 (Tex.Cr.App. 1971); Crestfield v. State, 471 S.W.2d 50 (Tex.Cr.App.1971); Martinez v. State, 437

S.W.2d 842 (Tex.Cr.App.1969). Therefore, the objection in the present case was made too late. *See* Jones v. State, supra; Martinez v. State, supra.

Although the court stated that the record should show that objection was made at the first opportunity, apparently because appellant had not been informed of the confrontation, the record does not support this statement, as discussed earlier. Therefore, the error, if any, was not properly preserved.

■ Likewise, the admission of Deputy Russell's testimony describing Mrs. Worthan's confrontation with appellant was not error, in light of the failure to make a timely objection to the earlier testimony concerning the same confrontation. The same evidence having earlier been admitted without objection, the overruling of appellant's second objection does not warrant a reversal. *e. g.,* Younger v. State, 457 S.W.2d 67 (Tex.Cr.App.1970); Merx v. State, 450 S.W.2d 658 (Tex.Cr.App.1970). Appellant's first and second grounds of error are overruled.

■ In his third ground of error, appellant further contends that Deputy Russell's testimony concerning Gayle Worthan's bond office identification was improperly admitted, as being a violation of the rule, as stated in Lyons v. State, 388 S.W.2d 950 (Tex.Cr.App.1965), which prohibits a third party from corroborating a witness' testimony of an out-of-court identification. Where such testimony is undisputed, the record reflects that no objection on this ground was made to the admission of the testimony. It is elementary that an appellant may not rely upon a ground of objection on appeal which he has not raised in the trial court. Golden v. State, 475 S.W.2d 273 (Tex.Cr.App.1971); Hinkle v. State, 442 S.W.2d 728 (Tex.Cr.App.1969); Cork v. State, 362 S.W.2d 314 (Tex.Cr.App.1962).

The judgment is affirmed.