Garza 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-90-281-CR





RUBEN GARZA,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT



NO. 105,385, HONORABLE TOM BLACKWELL, JUDGE PRESIDING



 





 Ruben Garza appeals his conviction on two counts of aggravated sexual assault of
a child, Tex. Penal Code Ann. § 22.021 (1989), charges to which he pled not guilty. He brings
forward two points of error: (1) that the admission into evidence of the child's "outcry" statement
violated appellant's constitutional rights of confrontation and due process of law; and (2) that the
child's "outcry" statement pertained to an inadmissible extraneous offense and was thus
improperly admitted into evidence. We will affirm the judgment of the trial court.



BACKGROUND



 Appellant was convicted of the aggravated sexual assault of the victim, a child of
two to three years. Appellant resided with Martha Guzman and her three children, of whom the
victim was the youngest. The evidence adduced at trial was that, on two separate occasions,
appellant sexually assaulted the child. On the first occasion, the appellant was seen lying naked
on a bed with the child, also naked, straddling his midsection. Testimony was that appellant was
in a sexually aroused state and that he was using the genital area of the child to masturbate
himself. The second sexual assault occurred at a swimming pool where appellant was observed
seated in a baby pool with his finger inserted into the child's vagina.

 John Sanchez, the victim's eighteen-year-old cousin, provided eyewitness testimony
as to both assaults. Ociel Carrillo, the victim's uncle, also testified at trial. In addition, Kimberly
Harmon, an employee of the Department of Human Services ("DHS"), recounted her interview
with the victim, during which the child made the outcry statement. Before Harmon testified,
appellant's counsel requested that the jury be excused while he took the witness on voir dire. At
the conclusion of this examination, the trial court found Harmon's account of the victim's outcry
statement admissible. Appellant's counsel then objected to the introduction of the outcry statement
on the basis that it was hearsay and that it lacked the traditional indicia of reliability. Further, his
objection alleged that the appellant's constitutional rights of confrontation and due process would
be abridged by admission of the statement. Finally, defense counsel's objection asserted that the
outcry statement referred to extraneous offenses. The trial court overruled appellant's objection
in its entirety. When the jury returned, Harmon's testimony resumed and the victim's outcry
statement was introduced into evidence. The jury eventually found the appellant guilty of
aggravated sexual assault of a child and the trial court sentenced him to twenty-five years in prison
for each count.



ADMISSION OF THE VICTIM'S OUTCRY STATEMENT



 In his first point of error, appellant takes issue with the trial court's decision to
admit into evidence the victim's outcry statement. He argues that by admitting the hearsay
statement, the court denied him his constitutional (1) right to confront the witness. The appellant
argues that because the State chose not to call the child as a witness, he faced a "Hobson's choice"
of invoking the jury's wrath for putting the extremely young child through the rigors of
examination, or foregoing any confrontation. He asserts that this "choice" violates the due
process of law. 

 The trial court's decision to admit the outcry statement was not arbitrary. The
court specifically referred to article 38.072 of the Code of Criminal Procedure in which the
legislature has outlined the requirements for the introduction of outcry statements made by child
victims of sexual abuse, statements that might otherwise be inadmissible hearsay. See Tex. Code
Crim. Proc. Ann. § 38.072 (Supp. 1992). Our determination of whether the trial court properly
admitted the statement begins with an examination of the statute, which provides in part that

 

(b) A statement . . . is not inadmissible because of the hearsay rule if:

 

(1) on or before the 14th day before the date the proceeding begins, the party
intending to offer the statement:

 

(A) notifies the adverse party of its intention to do so;

 

(B) provides the adverse party with the name of the witness through whom it
intends to offer the statement; and

 

(C) provides the adverse party with a written summary of the statement;

 

(2) the trial court finds, in a hearing conducted outside the presence of the jury,
that the statement is reliable based on the time, content, and circumstances of the
statement; and


(3) the child testifies or is available to testify at the proceeding in court or in any
other manner provided by law.



Id. This statute has been found to be constitutional on its face. See Buckley v. State, 786 S.W.2d
357, 359-60 (Tex. Crim. App. 1990). In light of this decision, any successful constitutional
challenge to the statute must focus upon its application to the time, circumstances, and contents
of this particular statement. Thus our immediate task is to determine whether the child's outcry
statement was admitted at the expense of the appellant's constitutional rights.

 In making this determination, we are aided by the court of criminal appeals'
specific guidance in evaluating the constitutionality of outcry statements admitted pursuant to
article 38.072. In Holland v. State, 802 S.W.2d 696 (Tex. Crim. App. 1991), the defendant
contended that article 38.072 was unconstitutional because it allowed the admission of a child's
out-of-court declaration without requiring the State to call the child to the stand, denying him his
Sixth Amendment right to confront the witness, the "Hobson's choice" argument that Ruben Garza
is now advancing.

 The court of criminal appeals acknowledged that


in some instances such a statute can in fact operate either to deprive an accused of
his constitutional right to confront the out-of-court child declarant, or to compel
him to call the child to the stand himself in order to attain that right, in violation
of due process and due course of law. In this event the statute would be
unconstitutional in application.



Holland, 802 S.W.2d at 699 (citations omitted). Nevertheless, the court affirmed Holland's
conviction because the defendant had not objected to the outcry statement on either confrontation
or due process grounds. Thus no error was preserved for the appellate court's review. 

 In Holland, the court of criminal appeals carefully set forth the proper procedure
for admitting a child's out-of-court statement without offending the constitutional rights of the
accused:


When the State proffers an out-of-court statement of a child witness pursuant to
Article 38.072, supra, it is incumbent upon the accused to object on the basis of
confrontation and/or due process and due course of law. At that point the State can
respond by following either one of two courses. First the State can announce its
intention to call the child declarant to the stand to allow confrontation without the
accused having to call the child to the stand himself. Alternatively the State can
make a showing both that 1) the out-of-court statement is one that is reliable under
the totality of the circumstances in which it was made, which Article 38.072
§ 2(b)(2) already requires; and 2) use of the out-of-court statement in lieu of the
child's testimony at trial "is necessary to protect the welfare of the particular child
witness" in that particular case. If the State follows either of these two courses,
the accused's objection on confrontation grounds should be overruled. Otherwise,
the confrontation objection is a valid one and should be sustained, irrespective of
whether the State has satisfied all of the statutory predicate for admissibility of
hearsay under Article 38.072, supra.



Id. at 699-700 (citations omitted). This language provides the necessary guidance for detecting
an improper application of article 38.072 in the instant cause.

 The record indicates that appellant objected during the voir-dire examination to the
introduction of the victim's outcry statement and that his objection specifically addressed
perceived denials of due process as well as the denial of the right to confront and cross-examine
the witness. 

 After the appellant properly objected, the State had only two constitutionally
permissible courses of action: (1) to call the witness to the stand, or (2) to show that the statement
was reliable and that its use was necessary to protect the welfare of this particular child witness. 
The record reveals that the State did not call the child to the witness stand. Therefore, the State
was required to show that the victim's statement was reliable under the totality of circumstances
and that use of the out-of-court statement in lieu of the child's testimony at trial was necessary to
protect this particular child's welfare. (2) At the conclusion of the voir dire examination, the trial
court explicitly found the outcry statement was reliable, but the record is devoid of any showing
that use of the outcry statement was necessary to protect the child's welfare. The trial court erred
by not following the constitutionally mandated procedure set forth in Holland for admitting an out-of-court statement pursuant to article 38.072 over appellant's objection that it violated his right
to confrontation and due process of law.



HARM ANALYSIS



 To the extent that the outcry statement was admitted without the requisite showing
of necessity, error was committed. The appellant's constitutional right to confront the witness was
adversely affected. This is not to say, however, that this error, admittedly of constitutional
proportion, necessarily compels reversal. Not all constitutional violations amount to reversible
error. Satterwhite v. Texas, 486 U.S. 249, 256 (1988); Boulware v. State, 542 S.W.2d 677, 679
(Tex. Crim. App. 1976), cert. denied, 430 U.S. 959 (1977). To determine whether reversal is
required, it is necessary for a reviewing court to apply a harm analysis.

 This process begins with Texas Rule of Appellate Procedure 81(b)(2). (3) The court
of criminal appeals has enunciated particular factors to be used in assessing the effect of error so
as to maintain the integrity of the judicial process leading to a conviction:  (1) the source and
nature of the error, (2) the extent to which the State emphasized the error; (3) the probable
collateral implications of the error; (4) the weight that a juror would probably place on such an
error; and (5) the likelihood that the State would repeat the error should it be declared harmless.
Harris v. State, 790 S.W.2d 568, 587-88 (Tex. Crim. App. 1989). When using the Harris
analysis to measure the effect of the error in this case, we conclude that its effect does not require
reversal.

 We begin by first identifying the source and nature of the error at issue. The
improper admittance of the outcry statement, absent a showing of necessity to protect the child's
welfare, served to infringe upon appellant's right of confrontation. But the existence of
constitutional error does not in and of itself necessitate characterizing such error as harmful. 
"Some constitutional violations, by their very nature cast so much doubt on the fairness of the trial
process that, as a matter of law, they can never be considered harmless. Sixth Amendment
violations that pervade the entire proceeding fall within this category." Satterwhite, 486 U.S. at
256 (emphasis added). It stands to reason, therefore, that those Sixth Amendment violations
which do not pervade the entire trial may not rise to the level of reversible error. At the time of
trial, the State did not have the benefit of Holland's directive to make an explicit finding that the
use of the child's outcry statement was necessary to protect this particular child, who was two and
a-half years old at the time of the alleged assaults, three and a-half at the time of the outcry
statement, and four years old at the time of trial. The exceedingly young age of the child weighs
heavily in favor of such a finding had the court addressed this issue. Because the outcry statement
was only a small component of the State's case-in-chief, we conclude that the confrontation
violation did not pervade the entire trial and did not cast doubt on the fairness of the trial process.

 Nor does the record reveal the State's heavy emphasis upon this outcry statement. 
John Sanchez, the victim's cousin, provided eyewitness testimony as to both assaults. In addition,
the victim's uncle, Ociel Carrillo, provided additional testimony concerning the child's
reenactment of the sexual assaults. In determining whether error is harmless, we are not to focus
exclusively upon the weight of the other evidence of guilt, but we are not to overlook it
completely because "overwhelming evidence can be a factor to be considered." Harris, 790 at
S.W.2d 587-88; see also Idaho v. Wright, 110 S. Ct. at 3150-51 (in which the Court suggests that
corroborating evidence of the truth of an improperly admitted hearsay statement may be
considered in determining if the error was harmless). In final argument, even appellant's counsel
stated. "[I]t kind of all comes down to John Sanchez and whether or not what he said is
believable, whether it is consistent, whether it ties in with other evidence that we have, such as
it is." In applying the second prong of the Harris test to the record as a whole, we cannot say that
the State emphasized the evidence admitted in error. 

 Harris requires that we next consider the probable collateral implications arising
from the error. The immediate implication is simply that, when interviewed, the child provided
a DHS employee with an account of events suggesting that a sexual assault took place and
identified appellant as the perpetrator. Neither the child's outcry statement nor Harmon's
testimony adds unique or novel incriminations of the appellant; John Sanchez' testimony had
already "set the stage" in that regard. Furthermore, testimony echoing the "in-and-out"
demonstrative testimony using dolls was admitted without objection when the victim's uncle, Ociel
Carrillo, testified that in his presence the child had repeatedly stabbed her doll in the vagina with
a pencil, simultaneously calling out the name "Ruben":


 And I was laying there watching TV with the kids, but I could kind
of see her in the corner of my eye. And then something caught my
attention and she said the name Ruben and I kind of -- you know,
it caught my attention.


 And I raised my head up and I looked back toward her, but she was
slightly turned where she couldn't see me looking at her. And then
she had a Barbie doll in her hand and she was holding it by one leg,
and she had a pencil in the other and she started to stab it in the
vagina area.


 And at the same time, she was saying "Ruben, Ruben, Ruben." She
said that three times.



 Compare Carrillo's testimony with the most offensive part of the outcry statement
related by Harmon:


 And she had taken the index finger of the doll and put it inside the
vagina. And I remember asking her,"Are you putting it inside or
outside?" and all she kept doing was taking it in and out, in and out,
in and out.



Because Carrillo's testimony was admitted without objection, appellant cannot complain that
admission of the child's outcry statement to Harmon compels reversal in this cause. See Banks
v. State, 643 S.W.2d 129, 134 (Tex. Crim. App. 1983); Sierra v. State, 482 S.W.2d 259, 262
(Tex. Crim. App. 1972). The jury had already heard testimony that Rosemary reenacted a sexual
assault using a doll and that she identified Ruben Garza with the act.

 At most, the erroneously-admitted testimony confirmed the uncle's testimony and
John Sanchez's eyewitness accounts of two sexual assaults. In Idaho v. Wright, after holding that
corroborating evidence of the truth of a hearsay statement may not be considered in determining
whether the statement possesses sufficient trustworthiness to satisfy the Confrontation Clause, the
Supreme Court suggested that such evidence may properly be considered in a harmless-error
analysis: "[W]e think the presence of corroborating evidence more appropriately indicates that any
error in admitting the statement might be harmless, rather than that any basis exists for presuming
the declarant to be trustworthy." 110 S. Ct. at 3150, citing Dutton v. Evans, 400 U.S. 88, 90
(1970) (plurality opinion). (4)

 A far different implication might arise where a child's outcry statement is the sole
vehicle by which the State brings charges against an accused. In that event, the erroneously-admitted testimony would constitute the sole damning evidence and the implications arising from
its admission would assume far greater significance. This is not the situation today, however,
where such similar testimony has been admitted without objection. We cannot say that the
collateral implications in this cause compel reversal.

 Our next concern is determining how much weight a juror would place on the
erroneously-admitted testimony. By virtue of the error, the State conceivably benefitted from the
jury's exposure to the outcry statement. But in light of the incriminating testimony of John
Sanchez, who observed appellant sexually assaulting the child on two separate occasions, and the
reenactment testimony of Ociel Carrillo, our belief is that the influence, if any, which the jury
may have attached to the erroneously-admitted outcry statement does not weigh so heavily as to
compel reversal. 

 Lastly, Harris requires us to ask whether declaring the error harmless would
encourage the State to repeat the error with impunity. We answer that question in the negative. 
This is not a situation in which either the State or the trial court consciously ignored the plain
dictates of the law. At the time of trial the State did not have the benefit of the guidelines set forth
in Holland. (5) The court of criminal appeals has now provided clear and succinct guidance
concerning the proper procedures to be employed when introducing outcry statements of victims
of sexual assaults. We are confident that the State will heed these guidelines in the future. 

 Having acknowledged the presence of error and having utilized the Harris analysis
to detect no harm emanating from that error, we conclude beyond a reasonable doubt that the
error did not contribute to the conviction. Appellant's first point of error is overruled.



 ADMISSIBILITY OF EXTRANEOUS OFFENSES



 In his second point of error, the appellant complains that the admission of the
victim's outcry statement was error because it contained references to extraneous offenses. We
disagree. Assuming that the statement did contain references to such offenses, we believe that it
would still be admissible under an exception to the general bar against evidence of extraneous
offenses.

 The general rule is that an accused may not be tried for a collateral crime or for
being a criminal generally. Williams v. State, 662 S.W.2d 344, 346 (Tex. Crim. App. 1983). 
This rule prevents the admission of evidence of an extraneous offense unless an exception to the
rule applies. Meyers v. State, 737 S.W.2d 6, 9 (Tex. App. 1987, no pet.). For years Texas has
recognized such an exception for cases "involving abnormal sexual conduct by a father, or one
in a position of locus parenti toward a young daughter." Williams v. State, 490 S.W.2d 604 (Tex.
Crim. App. 1973). The continuing vitality of this exception was again demonstrated in Boutwell
v. State, 719 S.W.2d 164, 178 (Tex. Crim. App. 1985) ("[W]e continue to recognize a narrow
exception for sex offenses to permit admission of similar extraneous sex offenses which occurred
between the minor complainant and the accused.") (emphasis in original). Thus the introduction
of the outcry statement, to the extent that it may have injected evidence of extraneous offenses,
was not error. Appellant's second point is overruled.



CONCLUSION



 It was error to admit the outcry statement without the procedures required to
guarantee appellant's constitutional rights to confrontation and due process. However, this error
did not rise to a level of harm sufficient to compel reversal in this case. The judgment of the trial
court is affirmed.


 

 Bea Ann Smith, Justice


[Before Justices Powers, Jones, and Smith, B.A.]

Affirmed

Filed: January 15, 1992

[Publish]
1. Though appellant's first point of error speaks in terms of "Constitutional" rights, it does
not specify the particular source(s) of those rights. When briefing constitutional issues,
attorneys should separate federal and state issues into separate points of error and provide
argument or analysis upon each ground. See McCambridge v. State, 712 S.W.2d 499, 501
n.9. (Tex. Crim. App. 1986). Failure to do so risks having the appellate court treat the
ambiguous point as multifarious, thus offering nothing for review. Id.


 Appellant's trial objection referenced both the federal and state constitutions, but
appellant has not argued that the protections afforded under the Texas constitution are more
expansive. Thus we decline to address that issue. Instead, our analysis proceeds upon the
assumption that it is a violation of appellant's right under the Sixth Amendment of the federal
constitution that is at issue.
2.   The two prongs of the procedure mandated in Holland, a showing of reliability and a
showing of necessity, can be traced to two companion cases in which the Supreme Court
addressed the requirements of satisfying the Confrontation Clause in cases involving the child
victims of sexual assault. In Maryland v. Craig, 110 S. Ct. 3157, 3169 (1990), a case
involving testimony of the child via one-way closed circuit television, the Court recognized the
State's interest in protecting child witnesses from the trauma of testifying in a child abuse case
as sufficiently important to justify the use of this special procedure. The Court went on to find
that a child accuser could be shielded from confrontation with the defendant, without violating
the Sixth Amendment, but only if the State made a specific showing that such a procedure was
necessary to protect this particular witness, not from the general trauma of the courtroom but
from the trauma of facing the defendant. Id. at 3167.


 In Idaho v. Wright, 110 S. Ct. 3139, 3149-50 (1990), the Court held that the admission
of hearsay statements of a child abuse victim of virtually the same age as the victim in the
present case violated the Confrontation Clause. We note that in Wright the defense and the
prosecution agreed that the child was so young as to be "unavailable," and therefore the Court
assumed without deciding that the child's age made her an unavailable witness within the
meaning of the Confrontation Clause. Id. at 3147. In finding constitutional error in the
admission of the hearsay statement, the Court focused solely on the lack of trustworthiness of
that statement.
3.   "[B]efore a federal constitutional error can be held harmless, the court must be able to
declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386
U.S. 18, 21 (1967). Tex. R. App. P. Ann. 81(b)(2) embodies the same analysis used by
federal courts when determining harmless error. See Beathard v. State, 767 S.W.2d 423, 432
(Tex. Crim. App. 1989). 
4. In Wright, because the state of Idaho did not argue that the error was harmless, the
Supreme Court specifically declined to engage in a harm analysis.
5. Holland was handed down January 30, 1991, approximately three months after this case
was tried.