Ruben GARZA, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–90–281–CR.

Court of Appeals of Texas, Austin.

Jan. 15, 1992.

Discretionary Review Refused April 22, 1992.

Michael E. Etchison, Austin, for appellant.

Carl Bryan Case, Jr., Asst. Dist. Atty., Austin, for appellee.

Before POWERS, JONES and BEA ANN SMITH, JJ.

BEA ANN SMITH, Justice.

Ruben Garza appeals his conviction on two counts of aggravated sexual assault of a child, Tex.Penal Code Ann. § 22.021 (1989), charges to which he pled not guilty. He brings forward two points of error: (1) that the admission into evidence of the child's "outcry" statement violated appellant's constitutional rights of confrontation and due process of law; and (2) that the child's "outcry" statement pertained to an inadmissible extraneous offense and was thus improperly admitted into evidence. We will affirm the judgment of the trial court.

## BACKGROUND

Appellant was convicted of the aggravated sexual assault of the victim, a child of two to three years. Appellant resided with Martha Guzman and her three children, of whom the victim was the youngest. The evidence adduced at trial was that, on two separate occasions, appellant sexually assaulted the child. On the first occasion, the appellant was seen lying naked on a bed with the child, also naked, straddling his midsection. Testimony was that appellant was in a sexually aroused state and that he was using the genital area of the child to masturbate himself. The second sexual assault occurred at a swimming pool where appellant was observed seated in a baby pool with his finger inserted into the child's vagina.

John Sanchez, the victim's eighteen-year-old cousin, provided eyewitness testimony as to both assaults. Ociel Carrillo, the victim's uncle, also testified at trial. In addition, Kimberly Harmon, an employee of the Department of Human Services ("DHS"), recounted her interview with the victim, during which the child made the outcry statement. Before Harmon testified, appellant's counsel requested that the jury be excused while he took the witness on voir dire. At the conclusion of this examination, the trial court found Harmon's account of the victim's outcry statement admissible. Appellant's counsel then objected to the introduction of the outcry statement on the basis that it was hearsay and that it lacked the traditional indicia of reliability. Further, his objection alleged that the appellant's constitutional rights of confrontation and due process would be abridged by admission of the statement. Finally, defense counsel's objection asserted that the outcry statement referred to extraneous offenses. The trial court overruled appellant's objection in its entirety. When the jury returned, Harmon's testimony resumed and the victim's outcry statement was introduced into evidence. The jury eventually found the appellant guilty of aggravated sexual assault of a child and the trial court sentenced him to twenty-five years in prison for each count.

## ADMISSION OF THE VICTIM'S OUTCRY STATEMENT

■ In his first point of error, appellant takes issue with the trial court's decision to admit into evidence the victim's outcry statement. He argues that by admitting the hearsay statement, the court denied him his constitutional[1] right to confront the witness. The appellant argues that

because the State chose not to call the child as a witness, he faced a "Hobson's choice" of invoking the jury's wrath for putting the extremely young child through the rigors of examination, or foregoing any confrontation. He asserts that this "choice" violates the due process of law.

The trial court's decision to admit the outcry statement was not arbitrary. The court specifically referred to article 38.072 of the Code of Criminal Procedure in which the legislature has outlined the requirements for the introduction of outcry statements made by child victims of sexual abuse, statements that might otherwise be inadmissible hearsay. See Tex.Code Crim. Proc.Ann. § 38.072 (Supp.1992). Our determination of whether the trial court properly admitted the statement begins with an examination of the statute, which provides in part that

(b) A statement ... is not inadmissible because of the hearsay rule if:

(1) on or before the 14th day before the date the proceeding begins, the party intending to offer the statement:

(A) notifies the adverse party of its intention to do so;

(B) provides the adverse party with the name of the witness through whom it intends to offer the statement; and

(C) provides the adverse party with a written summary of the statement;

(2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and

(3) the child testifies or is available to testify at the proceeding in court or in any other manner provided by law.

---

1. Though appellant's first point of error speaks in terms of "Constitutional" rights, it does not specify the particular source(s) of those rights. When briefing constitutional issues, attorneys should separate federal and state issues into separate points of error and provide argument or analysis upon each ground. See McCambridge v. State, 712 S.W.2d 499, 501 n. 9 (Tex. Crim.App.1986). Failure to do so risks having the appellate court treat the ambiguous point as multifarious, thus offering nothing for review. Id.

Appellant's trial objection referenced both the federal and state constitutions, but appellant has not argued that the protections afforded under the Texas constitution are more expansive. Thus we decline to address that issue. Instead, our analysis proceeds upon the assumption that it is a violation of appellant's right under the Sixth Amendment of the federal constitution that is at issue.

*Id.* This statute has been found to be constitutional on its face. *See Buckley v. State,* 786 S.W.2d 357, 359–60 (Tex.Crim. App.1990). In light of this decision, any successful constitutional challenge to the statute must focus upon its application to the time, circumstances, and contents of this particular statement. Thus our immediate task is to determine whether the child's outcry statement was admitted at the expense of the appellant's constitutional rights.

In making this determination, we are aided by the court of criminal appeals' specific guidance in evaluating the constitutionality of outcry statements admitted pursuant to article 38.072. In *Holland v. State,* 802 S.W.2d 696 (Tex.Crim.App.1991), the defendant contended that article 38.072 was unconstitutional because it allowed the admission of a child's out-of-court declaration without requiring the State to call the child to the stand, denying him his Sixth Amendment right to confront the witness, the "Hobson's choice" argument that Ruben Garza is now advancing.

The court of criminal appeals acknowledged that

> in some instances such a statute can in fact operate either to deprive an accused of his constitutional right to confront the out-of-court child declarant, or to compel him to call the child to the stand himself in order to attain that right, in violation of due process and due course of law. In this event the statute would be unconstitutional in application.

*Holland,* 802 S.W.2d at 699 (citations omitted). Nevertheless, the court affirmed Holland's conviction because the defendant had not objected to the outcry statement on either confrontation or due process grounds. Thus no error was preserved for the appellate court's review.

In *Holland,* the court of criminal appeals carefully set forth the proper procedure for admitting a child's out-of-court statement without offending the constitutional rights of the accused:

> When the State proffers an out-of-court statement of a child witness pursuant to Article 38.072, supra, it is incumbent upon the accused to object on the basis of confrontation and/or due process and due course of law. At that point the State can respond by following either one of two courses. First the State can announce its intention to call the child declarant to the stand to allow confrontation without the accused having to call the child to the stand himself. Alternatively the State can make a showing both that 1) the out-of-court statement is one that is reliable under the totality of the circumstances in which it was made, which Article 38.072 § 2(b)(2) already requires; and 2) use of the out-of-court statement in lieu of the child's testimony at trial "is necessary to protect the welfare of the particular child witness" in that particular case. If the State follows either of these two courses, the accused's objection on confrontation grounds should be overruled. Otherwise, the confrontation objection is a valid one and should be sustained, irrespective of whether the State has satisfied all of the statutory predicate for admissibility of hearsay under Article 38.072, supra.

*Id.* at 699–700 (citations omitted). This language provides the necessary guidance for detecting an improper application of article 38.072 in the instant cause.

The record indicates that appellant objected during the voir-dire examination to the introduction of the victim's outcry statement and that his objection specifically addressed perceived denials of due process as well as the denial of the right to confront and cross-examine the witness.

After the appellant properly objected, the State had only two constitutionally permissible courses of action: (1) to call the witness to the stand, or (2) to show that the statement was reliable *and* that its use was necessary to protect the welfare of this particular child witness. The record reveals that the State did not call the child to the witness stand. Therefore, the State was required to show that the victim's statement was reliable under the totality of circumstances and that use of the out-of-court statement in lieu of the child's testimony at trial was necessary to protect this

particular child's welfare.[2] At the conclusion of the voir dire examination, the trial court explicitly found the outcry statement was reliable, but the record is devoid of any showing that use of the outcry statement was necessary to protect the child's welfare. The trial court erred by not following the constitutionally mandated procedure set forth in *Holland* for admitting an out-of-court statement pursuant to article 38.072 over appellant's objection that it violated his right to confrontation and due process of law.

## HARM ANALYSIS

To the extent that the outcry statement was admitted without the requisite showing of necessity, error was committed. The appellant's constitutional right to confront the witness was adversely affected. This is not to say, however, that this error, admittedly of constitutional proportion, necessarily compels reversal. Not all constitutional violations amount to reversible error. *Satterwhite v. Texas*, 486 U.S. 249, 256, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988); *Boulware v. State*, 542 S.W.2d 677, 679 (Tex.Crim.App.1976), *cert. denied*, 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977). To determine whether reversal is required, it is necessary for a reviewing court to apply a harm analysis.

This process begins with Texas Rule of Appellate Procedure 81(b)(2).[3] The court of criminal appeals has enunciated particular factors to be used in assessing the effect of error so as to maintain the integrity of the judicial process leading to a conviction: (1) the source and nature of the error, (2) the extent to which the State emphasized the error; (3) the probable collateral implications of the error; (4) the weight that a juror would probably place on such an error; and (5) the likelihood that the State would repeat the error should it be declared harmless. *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989). When using the *Harris* analysis to measure the effect of the error in this case, we conclude that its effect does not require reversal.

We begin by first identifying the source and nature of the error at issue. The improper admittance of the outcry statement, absent a showing of necessity to protect the child's welfare, served to infringe upon appellant's right of confrontation. But the existence of constitutional error does not in and of itself necessitate characterizing such error as harmful. "Some constitutional violations, by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless. Sixth Amendment violations

---

**2.** The two prongs of the procedure mandated in *Holland*, a showing of reliability and a showing of necessity, can be traced to two companion cases in which the Supreme Court addressed the requirements of satisfying the Confrontation Clause in cases involving the child victims of sexual assault. In *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 3169, 111 L.Ed.2d 666 (1990), a case involving testimony of the child via one-way closed circuit television, the Court recognized the State's interest in protecting child witnesses from the trauma of testifying in a child abuse case as sufficiently important to justify the use of this special procedure. The Court went on to find that a child accuser could be shielded from confrontation with the defendant, without violating the Sixth Amendment, but only if the State made a specific showing that such a procedure was necessary to protect this particular witness, not from the general trauma of the courtroom but from the trauma of facing the defendant. *Id.* 110 S.Ct. at 3167.

In *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 3149–50, 111 L.Ed.2d 638 (1990), the

Court held that the admission of hearsay statements of a child abuse victim of virtually the same age as the victim in the present case violated the Confrontation Clause. We note that in *Wright* the defense and the prosecution agreed that the child was so young as to be "unavailable," and therefore the Court assumed without deciding that the child's age made her an unavailable witness within the meaning of the Confrontation Clause. *Id.* 110 S.Ct. at 3147. In finding constitutional error in the admission of the hearsay statement, the Court focused solely on the lack of trustworthiness of that statement.

**3.** "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Tex.R.App.P.Ann. 81(b)(2) embodies the same analysis used by federal courts when determining harmless error. *See Beathard v. State*, 767 S.W.2d 423, 432 (Tex.Crim.App.1989).

that *pervade the entire proceeding* fall within this category." *Satterwhite*, 486 U.S. at 256, 108 S.Ct. at 1797 (emphasis added). It stands to reason, therefore, that those Sixth Amendment violations which do not pervade the entire trial may not rise to the level of reversible error. At the time of trial, the State did not have the benefit of *Holland's* directive to make an explicit finding that the use of the child's outcry statement was necessary to protect this particular child, who was two and a-half years old at the time of the alleged assaults, three and a-half at the time of the outcry statement, and four years old at the time of trial. The exceedingly young age of the child weighs heavily in favor of such a finding had the court addressed this issue. Because the outcry statement was only a small component of the State's case-in-chief, we conclude that the confrontation violation did not pervade the entire trial and did not cast doubt on the fairness of the trial process.

Nor does the record reveal the State's heavy emphasis upon this outcry statement. John Sanchez, the victim's cousin, provided eyewitness testimony as to both assaults. In addition, the victim's uncle, Ociel Carrillo, provided additional testimony concerning the child's reenactment of the sexual assaults. In determining whether error is harmless, we are not to focus exclusively upon the weight of the other evidence of guilt, but we are not to overlook it completely because "overwhelming evidence can be a factor to be considered." *Harris*, 790 at S.W.2d 587–88; *see also Idaho v. Wright*, 110 S.Ct. at 3150–51 (in which the Court suggests that corroborating evidence of the truth of an improperly admitted hearsay statement may be considered in determining if the error was harmless). In final argument, even appellant's counsel stated. "[I]t kind of all comes down to John Sanchez and whether or not what he said is believable, whether it is consistent, whether it ties in with other evidence that we have, such as it is." In applying the second prong of the *Harris* test to the record as a whole, we cannot say that the State emphasized the evidence admitted in error.

*Harris* requires that we next consider the probable collateral implications arising from the error. The immediate implication is simply that, when interviewed, the child provided a DHS employee with an account of events suggesting that a sexual assault took place and identified appellant as the perpetrator. Neither the child's outcry statement nor Harmon's testimony adds unique or novel incriminations of the appellant; John Sanchez' testimony had already "set the stage" in that regard. Furthermore, testimony echoing the "in-and-out" demonstrative testimony using dolls was admitted without objection when the victim's uncle, Ociel Carrillo, testified that in his presence the child had repeatedly stabbed her doll in the vagina with a pencil, simultaneously calling out the name "Ruben":

> And I was laying there watching TV with the kids, but I could kind of see her in the corner of my eye. And then something caught my attention and she said the name Ruben and I kind of—you know, it caught my attention.
> And I raised my head up and I looked back toward her, but she was slightly turned where she couldn't see me looking at her. And then she had a Barbie doll in her hand and she was holding it by one leg, and she had a pencil in the other and she started to stab it in the vagina area. And at the same time, she was saying "Ruben, Ruben, Ruben." She said that three times.

Compare Carrillo's testimony with the most offensive part of the outcry statement related by Harmon:

> And she had taken the index finger of the doll and put it inside the vagina. And I remember asking her, "Are you putting it inside or outside?" and all she kept doing was taking it in and out, in and out, in and out.

Because Carrillo's testimony was admitted without objection, appellant cannot complain that admission of the child's outcry statement to Harmon compels reversal in this cause. *See Banks v. State*, 643 S.W.2d 129, 134 (Tex.Crim.App.1983); *Sierra v. State*, 482 S.W.2d 259, 262 (Tex.Crim.App.

1972). The jury had already heard testimony that Rosemary reenacted a sexual assault using a doll and that she identified Ruben Garza with the act.

At most, the erroneously-admitted testimony confirmed the uncle's testimony and John Sanchez's eyewitness accounts of two sexual assaults. In *Idaho v. Wright*, after holding that corroborating evidence of the truth of a hearsay statement may not be considered in determining whether the statement possesses sufficient trustworthiness to satisfy the Confrontation Clause, the Supreme Court suggested that such evidence may properly be considered in a harmless-error analysis: "[W]e think the presence of corroborating evidence more appropriately indicates that any error in admitting the statement might be harmless, rather than that any basis exists for presuming the declarant to be trustworthy." 110 S.Ct. at 3150, citing *Dutton v. Evans*, 400 U.S. 74, 90, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970) (plurality opinion).[4]

A far different implication might arise where a child's outcry statement is the sole vehicle by which the State brings charges against an accused. In that event, the erroneously-admitted testimony would constitute the sole damning evidence and the implications arising from its admission would assume far greater significance. This is not the situation today, however, where such similar testimony has been admitted without objection. We cannot say that the collateral implications *in this cause* compel reversal.

Our next concern is determining how much weight a juror would place on the erroneously-admitted testimony. By virtue of the error, the State conceivably benefitted from the jury's exposure to the outcry statement. But in light of the incriminating testimony of John Sanchez, who observed appellant sexually assaulting the child on two separate occasions, and the reenactment testimony of Ociel Carrillo, our belief is that the influence, if any,

which the jury may have attached to the erroneously-admitted outcry statement does not weigh so heavily as to compel reversal.

Lastly, *Harris* requires us to ask whether declaring the error harmless would encourage the State to repeat the error with impunity. We answer that question in the negative. This is not a situation in which either the State or the trial court consciously ignored the plain dictates of the law. At the time of trial the State did not have the benefit of the guidelines set forth in *Holland*.[5] The court of criminal appeals has now provided clear and succinct guidance concerning the proper procedures to be employed when introducing outcry statements of victims of sexual assaults. We are confident that the State will heed these guidelines in the future.

Having acknowledged the presence of error and having utilized the *Harris* analysis to detect no harm emanating from that error, we conclude beyond a reasonable doubt that the error did not contribute to the conviction. Appellant's first point of error is overruled.

## ADMISSIBILITY OF EXTRANEOUS OFFENSES

■ In his second point of error, the appellant complains that the admission of the victim's outcry statement was error because it contained references to extraneous offenses. We disagree. Assuming that the statement did contain references to such offenses, we believe that it would still be admissible under an exception to the general bar against evidence of extraneous offenses.

The general rule is that an accused may not be tried for a collateral crime or for being a criminal generally. *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App. 1983). This rule prevents the admission of evidence of an extraneous offense unless an exception to the rule applies. *Meyers v.*

---

**4.** In *Wright,* because the state of Idaho did not argue that the error was harmless, the Supreme Court specifically declined to engage in a harm analysis.

**5.** *Holland* was handed down January 30, 1991, approximately three months after this case was tried.

*State,* 737 S.W.2d 6, 9 (Tex.App.1987, no pet.). For years Texas has recognized such an exception for cases "involving abnormal sexual conduct by a father, or one in a position of locus parenti toward a young daughter." *Williams v. State,* 490 S.W.2d 604 (Tex.Crim.App.1973). The continuing vitality of this exception was again demonstrated in *Boutwell v. State,* 719 S.W.2d 164, 178 (Tex.Crim.App.1985) ("[W]e continue to recognize a narrow exception for sex offenses to permit admission of similar extraneous sex offenses which occurred *between the minor complainant and the accused.*") (emphasis in original). Thus the introduction of the outcry statement, to the extent that it may have injected evidence of extraneous offenses, was not error. Appellant's second point is overruled.

## CONCLUSION

It was error to admit the outcry statement without the procedures required to guarantee appellant's constitutional rights to confrontation and due process. However, this error did not rise to a level of harm sufficient to compel reversal in this case. The judgment of the trial court is affirmed.

JONES, Justice, dissenting.

I agree with the majority's conclusion that the admission of the child's "outcry statement" through the testimony of DHS-worker Kimberly Harmon was error. However, I am unable to conclude beyond a reasonable doubt that the error made no contribution to the conviction or punishment. Accordingly, I dissent from the affirmance of the conviction.

With respect to trial-court error in a criminal case, Rule 81(b)(2) of the Rules of Appellate Procedure effectively creates a "presumption of harm":

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court *shall reverse* the judgment under review, *unless the appellate court determines beyond a reasonable doubt that the error made no*

*contribution to the conviction or to the punishment.*

Tex.R.App.P. 81(b)(2) (emphasis added).

The United States Supreme Court has recognized that the discrimination required by a harmless error analysis "is one of judgment transcending confinement by formula or precise rule." *Kotteakos v. United States,* 328 U.S. 750, 761, 66 S.Ct. 1239, 1246, 90 L.Ed. 1557 (1946). Nonetheless, the Court of Criminal Appeals has provided appellate courts with general guidelines to follow in applying Rule 81(b)(2):

In summary, the reviewing court should focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making; it should ask not whether the jury reached the correct result, but rather whether the jurors were able properly to apply law to facts in order to reach a verdict. Consequently, the reviewing court must focus upon the process and not on the result. In other words, a reviewing court must always examine whether the trial was an essentially fair one. If the error was of a magnitude that it disrupted the jurors' orderly evaluation of the evidence, no matter how overwhelming it might have been, then the conviction is tainted.

*Harris v. State,* 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989).

The error here was in the admission of the testimony of Kimberly Harmon, a DHS worker to whom the child first made outcry. Harmon's testimony itself was riveting, as she described how the child used anatomically correct dolls to reenact the events:

A: (by Harmon): Then I took the pants off of the girl [doll] and asked her if anybody had touched her here and she said, "Yes."

And I said, "Who," and it was the same response, "Daddy."

"And who is Daddy?" "Ruben." And "Show me." And she had taken the index finger of the doll and put it inside the vagina. And I remember asking her, "Are you putting it inside or outside," and all she kept doing was

taking it in and out, in and out, in and out.

Q: Do you recall Rosemary's expression or demeanor?

A: She was real intense. She kept doing it in and out, in and out. She never said anything, but she just kept doing it in and out.

Even from the "cold" black-and-white record before this Court, one can almost feel the child reliving a traumatic experience.

The majority characterizes Harmon's testimony as "only a small component of the State's case-in-chief," but in fact it was one of only three "pieces" of evidence the State used to prove appellant's commission of the offense. Moreover, an outcry statement is particularly inculpatory because it comes from the victim herself. Far from being an unimportant piece of evidence, Harmon's testimony regarding the child's outcry statement filled what might otherwise have been regarded by some jurors as a hole in the State's case.

In addition, although the State may have considered the testimony of John Sanchez its strongest evidence, the prosecutor did not ignore Harmon's testimony in her closing argument:

Now, keep in mind also what you heard from Kim Harmon. Consider her testimony. She's the DHS worker who had contact with little Rosemary, two and a half at this time, at the DHS shelter, and she did a videotape.

And what did that little girl tell her? She took those dolls and showed her what Ruben Garza had done to her. She said, through her actions with the doll, that he had penetrated her vaginal area, her female sexual organ, in through the female sexual organ with the finger, with the index finger is what she showed Kim.

Where does a two and a half-year old child learn that, ladies and gentlemen?

In my opinion, Harmon's testimony, in combination with the prosecutor's argument, "might possibly have prejudiced the jurors'

decision-making." *Harris,* 790 S.W.2d at 587–88.

This conclusion is confirmed by applying a slightly different formulation, also from *Harris,* of the Court of Criminal Appeals' harm-analysis guidelines:

A procedure for reaching this determination [of harmfulness] should: first, isolate the error and all its effects, using the considerations set out above and any other considerations suggested by the facts of an individual case; and *second, ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted.*

*Harris,* 790 S.W.2d at 588 (emphasis added).[1] Using this formulation of the procedure, there is no doubt in my mind that the error in the present case calls for reversal: a rational trier of facts clearly might have reached a different result if the error and its effects had not resulted. Without the outcry statement, the prosecution would have been left primarily with the testimony of John Sanchez. His testimony was strong, but we are not able to discern from the record how credible he appeared to the jurors. Certainly, we cannot say that a rational trier of facts would have been *required* to accept Sanchez's testimony at face value.

The true difficulty in this case, it seems to me, stems from the inescapable feeling that the jury reached the correct result. Yet the Court of Criminal Appeals has expressly admonished us not to consider that factor: "[The reviewing court] should ask not whether the jury reached the correct result. . . . [T]he reviewing court must focus upon the process and not on the result." *Harris,* 790 S.W.2d at 588.

We must focus on the process, not the result. In the present case, the process was flawed, and following the guidelines of *Harris* and subsequent cases I am not able to determine beyond a reasonable doubt that the error made no contribution to the conviction or punishment. I would reverse

---

1. I recognize that the continued viability of such an "outcome determinative" analysis may be in

doubt. *See Shelby v. State,* 819 S.W.2d 544 (Tex.Crim.App.1991).

the conviction and remand the cause for a new trial.