United States Court of Appeals
Fifth Circuit

**F I L E D**

November 17, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

—————

No. 05-70037

—————

GREGORY EDWARD WRIGHT,

Petitioner - Appellant,

versus

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL
INSTITUTIONS DIVISION,

Respondent - Appellee.

Appeal from the United States District Court
For the Northern District of Texas

Before SMITH, GARZA, and PRADO, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Gregory Edward Wright moves for a certificate of appealability ("COA") to appeal the district

court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He argues

that reasonable jurists would find debatable whether: 1) his Confrontation Clause claim is

procedurally barred; 2) he received ineffective assistance of counsel at trial; and 3) the state

suppressed evidence in violation of the Fourteenth Amendment and *Brady v. Maryland*, 373 U.S. 83

(1963).

I

The evidence at trial established that Donna Vick was stabbed to death in her home in DeSoto, Texas, in the early hours of March 21, 1997. Wright, who had been staying with Vick in her home, was seen with her at a VFW lodge on the night before the murder. Around 4:00 a.m. the next morning, Wright and his friend, John Adams, drove Vick's car to purchase crack cocaine from a drug dealer who was staying at Llewelyn Mosley's home. Mosley testified that Adams and Wright arrived at his house on the night of the murder and told him that they had some things from a woman in DeSoto that they wanted to get rid of, including a television, a weed eater, a rifle, a color printer, and a microwave. Several of these items were later identified as belonging to Vick. Wright negotiated with the dealer. After exchanging some of the items, Wright and Adams appeared cheerful and exchanged "high fives."

The next day, Adams asked Daniel McGaughey, an employee at a video store, to call the police because he wanted to turn himself in. Adams directed the police to Vick's house and assisted in recovering her car. DNA testing revealed that blood found on the steering wheel belonged to Wright. At the house, the police found Vick's body on her bed and Wright's bloody fingerprint on her pillowcase. In a trash can, the police found a handwritten note reading, "Do you want to do it?"

Adams also led the police to a shack that Wright sometimes stayed in, where they arrested Wright and seized a bloody and gold-paint splattered pair of blue jeans. Outside the shack, the police found a bloody knife. DNA evidence established that the blood on the knife and jeans was Vick's. Several cans of gold spray paint were found in Wright's home, and witnesses testified that Wright had previously been seen with gold paint on his face and clothes. A police officer testified that he had

-2-

known people to inhale spray paint to get high. The police also found mail addressed to Adams at the shack. After Wright was arrested, he phoned a friend from jail and asked her to remove any of his clothing from the shack.

Adams also led the police to a knife in a vacant lot near Mosley's home. DNA testing revealed that the knife had Vick's blood on it. A medical examiner testified that Vick could have been stabbed by more than one knife.

At trial, the prosecution argued that both Adams and Wright attacked Vick.[1] The court instructed the jury that it could convict Wright only in the event that it found that he actually attacked Vick. The court did not instruct the jury on a law of the parties theory of liability.[2] The jury found Wright guilty, and he was sentenced to death.

Wright's conviction was affirmed on direct appeal to the Texas Court of Criminal Appeals ("TCCA"). *Wright v. State*, 28 S.W.3d 526 (Tex. Crim. App. 2000). He petitioned the state court for a writ of habeas corpus. The state trial judge adopted the State's proposed findings of fact and conclusions of law in their entirety and recommended that relief be denied. The TCCA adopted the trial court's findings of fact and conclusions of law and denied relief.

Wright petitioned the United States District Court for the Northern District of Texas for a federal writ of habeas corpus. A magistrate judge recommended denying relief on all of Wright's

---

[1] (R. 44, 76.) Wright contends that during the sentencing phase of the proceeding, the prosecution argued that he acted alone. But the portion of the transcript he cites in support of that proposition, (R. 51, 17.), is his own attorney's argument. The prosecution did submit testimony relaying Adams's statement to police that Wright alone killed Vick, but the prosecution did not argue that this portion of Adams's statement was credible. We therefore find no support in the record for Wright's contention that the prosecution argued that Wright alone committed the offense.

[2] During closing arguments, the prosecutor repeatedly attempted to argue that Wright could be found guilty as an accomplice. Wright's counsel objected each time, and the court sustained the objection. In his closing argument, Wright's attorney argued to the jury that the charge did not permit conviction merely based on a finding that "[Wright] is a party to this."

claims. *Wright v. Dretke*, 3:01-CV-0472, 2004 WL 438941 (N.D. Tex. Mar. 10, 2004). The district court judge adopted the magistrate judge's recommendation and denied the petition.

II

We issue a certificate of appealability only when the movant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires him to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). At this stage, we are not permitted to give full consideration of the factual or legal bases in support of the claim. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Instead, we merely conduct an overview of the claims and a general assessment of their merits. *Id.*

The movant's arguments "must be assessed under the deferential standard required by 28 U.S.C. § 2254(d)(1)." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *see Miller-El*, 537 U.S. at 348-50 (Scalia, J., concurring) (arguing that a court must consider 28 U.S.C. § 2254(d)'s deferential standard of review when ruling on motion for COA). A federal court may not issue a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). A state court's decision is contrary to clearly established federal law if the court either: 1) arrived at a conclusion of law opposite that reached by the Supreme Court; or 2) arrived at a result opposite that of the Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court's decision is an unreasonable application of clearly established federal law if the state court derives the correct legal principle from Supreme Court decisions but applies that

-4-

principle in an objectively unreasonable manner. *Id.* at 409.

A

Wright argues that his Sixth Amendment right to confront witnesses against him was violated when the trial court admitted into evidence the testimony of Detective Dan Trippel. On direct examination by the prosecution, Trippel described a conversation he had with Adams, who did not testify. Trippel testified that he discovered Vick's body after meeting with Adams. On cross examination, Wright elicited testimony from Trippel that Adams claimed that he owned one of the knives used in the murder. On redirect, Trippel testified that Adams told him that Wright used Adams's knife to stab Vick. Wright made a hearsay objection. The prosecution responded that the testimony was admissible under the rule of optional completeness. *See* TEX. R. EVID. 107 ("When part of a . . . conversation . . . is given in evidence by one party, the whole on the same subject may be inquired into by the other . . . ."). Under the rule of optional completeness, hearsay is admissible when it serves to clarify other hearsay evidence elicited by the opposing party. *Bunton v. State*, 136 S.W.3d 355, 367 (Tex. App.) ) Austin 2004, pet. ref'd). The prosecution argued that if the jury only heard that Adams admitted that he owned one of the murder weapons, it might be left with the mistaken impression that Adams confessed to Trippel that he had killed Vick. Wright responded that the rule was inapplicable because the jury had not been given a false impression. Wright did not argue to the trial court that the Sixth Amendment prohibited admission of this testimony.

On direct appeal, Wright argued that the admission of Trippel's testimony violated Texas evidentiary rules[3] and the Confrontation Clause. The TCCA deemed Wright's Confrontation Clause

---

[3] To the extent that Wright now argues that the Texas courts misapplied the rule of optional completeness, we note that violations of state law are generally not cognizable on habeas review unless they render the trial fundamentally unfair. *Hughes v. Dretke*, 412 F.3d 582, 591 (5th Cir. 2005).

-5-

argument waived because his objection based on hearsay did not alert the trial court to the federal nature of his claim. *Wright*, 28 S.W.3d at 536; *see* TEX. R. APP. P. 33.1(a)(1)(A) (stating that to preserve error for appeal, appellant must have objected with sufficient specificity to make trial court "aware of the complaint, unless the specific grounds were apparent from the context"). On subsequent habeas review, the district court consequently deemed Wright's Confrontation Clause claim procedurally defaulted. *Wright*, 2004 WL 438941, at \*6.

A federal court may not grant a petition for a writ of habeas corpus where the state court expressly denied the claim based on an independent and adequate state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991).[4] To be adequate, a state rule must be "firmly established and regularly followed." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *see Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *N.A.A.C.P. v. Alabama ex rel. Flowers*, 377 U.S. 288, 295-301 (1964). It is the petitioner's burden to demonstrate that the procedural bar is not regularly applied, *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997), or that the rule was exorbitantly applied under the circumstances of the case, *Lee v. Kemna*, 534 U.S. 362, 376 (2002). We review the adequacy of a state law used to preclude federal habeas review *de novo*. *Rosales v. Dretke*, 444 F.3d 703, 707 (5th Cir. 2006). Wright argues that his objection based on a Texas state evidentiary rule was sufficient under Texas law to preserve his Confrontation Clause claim and that the TCCA's decision is therefore not an adequate procedural bar.

Wright's argument is contrary to Texas law, which generally requires a defendant to make

___

[4] An exception to this doctrine exists where the petitioner demonstrates either cause for the default and actual prejudice as a result of the alleged violation of federal law or that failing to consider his claim will yield a fundamental "miscarriage of justice." *Coleman*, 501 U.S. at 750. Wright has not attempted to make such a showing in his brief in this court, and any such argument is now considered waived. *Nixon v. Epps*, 405 F.3d 318, 323 (5th Cir. 2005) (citations omitted).

a specific Confrontation Clause objection to preserve such an error.  In support of its ruling that a hearsay objection does not generally preserve a Confrontation Clause claim, the TCCA relied on *Dewberry v. State*, 4 S.W.3d 735, 752 n.16 (Tex. Crim. App. 1999).  *Wright*, 28 S.W.3d at 536. Although *Dewberry* was decided after Wright's 1997 trial, the TCCA had applied the same rule as early as 1991 in *Holland v. State*, 802 S.W.2d 696 (Tex. Crim. App. 1991).  Holland objected to the admission of testimony concerning an out-of-court statement on the ground of hearsay.  *Id*. at 700. He did not object that admission of the evidence violated the Confrontation Clause.  *Id.*  The TCCA held that the federal constitutional claim was not preserved for review.  *Id.*  Texas courts have frequently held, both before[5] and after[6] Wright's trial, that where it is not clear from the context of the trial that the defendant was raising a Confrontation Clause claim, a hearsay objection does not preserve the federal constitutional error.

---

[5] *See Cantu v. State*, 939 S.W.2d 627, 634 (Tex. Crim. App. 1997); *Fultz v. State*, 940 S.W.2d 758, 760-61 (Tex. App.)⟩Texarkana 1997, pet. ref'd); *Judd v. State*, 923 S.W.2d 135, 139 (Tex. App.)⟩Fort Worth 1996, pet. ref'd); *Tapia v. State*, 933 S.W.2d 631, 633 (Tex. App.)⟩Dallas 1996, pet. ref'd); *Ward v. State*, 910 S.W.2d 1, 4 (Tex. App.)⟩Tyler 1995, pet. ref'd); *Cofield v. State*, 857 S.W.2d 798, 804 (Tex. App.)⟩Corpus Christi 1993), *aff'd*, 891 S.W.2d 952 (Tex. Crim. App. 1994); *Garza v. State*, 828 S.W.2d 432, 435 (Tex. App.)⟩Austin 1992, pet. ref'd); *Rodriguez v. State*, 10-96-00713-CR, 1997 WL 666949, at *2 (Tex. App.)⟩Houston [1st Dist.] Oct. 9, 1997, no pet.); *In Matter of M.G.*, 04-95-00752-CV, 1996 WL 721951, at *2 n.2 (Tex. App.)⟩San Antonio Dec. 11, 1996, no pet.).

[6] *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005); *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004); *Eustis v. State*, 191 S.W.3d 879, 885-86 (Tex. App.)⟩Houston [14th Dist.] 2006, no pet.); *Neal v. State*, 186 S.W.3d 690, 692 (Tex. App.)⟩Dallas 2006, no pet.);*Campos v. State*, 186 S.W.3d 93, 98 (Tex. App.)⟩Houston [1st Dist.] 2005, no pet.); *Tatum v. State*, 166 S.W.3d 362, 364 (Tex.App.)⟩Fort Worth  2005, pet. ref'd); *Bunton*, 136 S.W.3d at 368; *Thacker v. State*, 999 S.W.2d 56, 61 (Tex. App.)⟩Houston [14th Dist.] 1999, pet. ref'd); *Thornton v. State*, 994 S.W.2d 845, 853-54 (Tex. App.)⟩Fort Worth 1999, pet. ref'd)*; McCleod v. State*, 05-04-01331-CR, 2005 WL 3369150, at *4 (Tex. App.)⟩Dallas Dec. 12, 2005, no pet.); *Rios v. State*, –S.W.3d–, 2005 WL 3077220, at *2-*3 (Tex. App.)⟩Houston [1st Dist.] 2005, pet. ref'd, untimely filed); *Guillory v. State*, 01-05-00076-CR, 2005 WL 2670938, at *5 (Tex. App.)⟩Houston [1st Dist.] Oct. 20, 2005, pet. ref'd); *Cox v. State*, 12-03-00384-CR, 2005 WL 2035863, at *2 (Tex. App.)⟩Tyler Aug. 24, 2005, no pet.); *Gray v. State*, 05-04-01269-CR, 2005 WL 1670715, at *8 (Tex. App.)⟩Dallas July 19, 2005, no pet.); *Cantrell v. State*, 2-04-029-CR, 2005 WL 1542663, at *1-3 (Tex. App.)⟩Fort Worth June 30, 2005, pet. ref'd); *Blay v. State*, 2-04-346-CR, 2005 WL 1186293, at *1 (Tex. App.)⟩Fort Worth May 19, 2005, no pet.); *Hughes v. State*, 14-03-00636-CR, 2004 WL 2108288, at *4 (Tex. App.)⟩Houston [14th Dist.] Sept. 23, 2004, no pet.); *Cooke v. State*, 12-03-00183-CR, 2004 WL 1253306, at *2 (Tex. App.)⟩Tyler June 9, 2004, no pet.); *Davila v. State*, 05-03-00689-CR, 2004 WL 1173395, at *5 (Tex. App.)⟩Dallas May 27, 2004, no pet.).

The cases Wright cites are not to the contrary. None addresses the specific question of under what circumstances a hearsay objection is sufficient to preserve a Confrontation Clause claim. Wright primarily relies on *Kittelson v. Dretke*, 426 F.3d 306 (5th Cir. 2005), in which we held that the petitioner's Confrontation Clause claim was exhausted when it had been fairly presented in a state petition for a writ of habeas corpus. Because no state court held that Kittelson's claim was barred by a state procedural rule, *id.* at 316 (noting that state court did not rely on procedural rule in disposing of Kittelson's claim), we did not address whether Texas courts consistently held that hearsay objections generally did not preserve Confrontation Clause claims. *Kittelson*, therefore, does not control this case.[7]

Wright also cites several cases applying Texas's statutory exception to the hearsay rule for statements made by child abuse victims. *See* TEX. CODE CRIM. PROC. ART. 38.072. In *Lankston v. State*, 827 S.W.2d 907 (Tex. Crim. App. 1992) (Benavides, J.), for example, the defendant lodged a hearsay objection to the testimony of an adult to whom the alleged child victim of sexual assault had reported the crime. Such testimony is admissible under the statute so long as the prosecution provided the defendant with a written summary of the statement prior to trial. *Id*. at 909; *see* TEX. CODE CRIM. PROC. ART. 38.072, § 2(b). The TCCA held that a hearsay objection is sufficient to preserve a claim that the proffered testimony fell outside the written summary where it is clear from the transcript that the trial court understood the basis for the objection. *Lankston*, 827 S.W.2d at 910-11; *see Heidelberg v. State*, 144 S.W.3d 535, 539 (Tex. Crim. App. 2004) (distinguishing *Lankston* on the ground that the record "clearly showed that all parties knew the nature of the

[7]*Hutchins v. Wainwright*, 715 F.2d 512, 518 (11th Cir. 1983), upon which Wright also relies, similarly concerns whether a claim was presented to the state court for purposes of exhaustion.

objection"). The TCCA did not consider in what context a hearsay objection was sufficient to preserve a Confrontation Clause claim.

Similarly, in *Gabriel v. State*, 973 S.W.2d 715, 719 (Tex. App.)) Waco 1998, no pet.), the prosecution presented testimony under the same statutory exception to the hearsay rule. The defendant made a hearsay objection on the ground that the prosecution failed to provide notice of its intent to introduce certain testimony concerning a child victim's outcry statements. *Id*. at 718. The court of appeals held that the objection was sufficient to preserve the error because "after a hearsay objection is made, the State has the burden to show it has complied with all the requirements" of the statute. *Id*. at 719. Because Wright's trial did not concern application of Texas's statutory child-victim outcry exception to the hearsay rule, *Gabriel* is not contrary to the TCCA's decision in Wright's case.[8]

We therefore conclude it is not debatable amongst jurists of reason that the Texas court's application of the contemporaneous objection rule constitutes an adequate and independent procedural bar to Wright's Confrontation Clause claim.

B

---

[8] The remaining state court cases Wright cites are not on point. *Cofield v. State*, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994), stands for the proposition that a hearsay objection is sufficient to preserve a claim that an exception to the hearsay prohibition did not apply. *Samuel v. State*, 688 S.W.2d 492, 495-96 (Tex. Crim. App. 1985), holds that an objection to the introduction of "statements made after [the defendant] was under arrest" preserves a claim under Texas state law prohibiting the introduction of statements made by a defendant while he was being detained by non-state actors. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977), holds that an objection that evidence of a prior conviction was improper because it was not yet final preserves the issue of whether the probationary period of the prior conviction had expired. *Coleman v. State*, 644 S.W.2d 116, 119 (Tex. App.)) Austin 1982, pet. ref'd), concerns the adequacy of an objection to the prosecution's comment on the defendant's post-arrest silence where the context of the objection made clear the nature of the objection. *See Heidelberg,* 144 S.W.3d at 540 (distinguishing *Coleman* on the ground that the basis for Coleman's objection was clear).

Finally, the federal cases Wright cites do not apply Texas's procedural rules and instead concern: 1) whether a claim was presented to a state court for purposes of Supreme Court appellate jurisdiction, *Lilly v. Virginia*, 527 U.S. 116, 123 (1999); or 2) whether a state court's clearly erroneous ruling that no objection whatsoever had been made is an adequate bar to federal review, *Douglas v. State of Alabama*, 380 U.S. 415, 422-23 (1965).

Wright argues that he received ineffective assistance of trial counsel. We evaluate such claims under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must establish that his counsel's performance was deficient and that he suffered prejudice as a result. *Id.* at 687. Prejudice results when there is a reasonable probability that the result of the proceeding would have been different absent the error. *Id.* at 695.

Wright claims that his trial counsel was ineffective for failing to make a Confrontation Clause objection to the admission of Adams's hearsay statement. As noted, that statement was in sum that Wright used Adams's knife to kill Vick. Wright argues that Adams's hearsay statement was critical because the jury was not instructed on a law of the parties theory of liability. The jury therefore had to find that Wright personally attacked Vick. Wright argues that Adams's hearsay statement that he gave his knife to Wright therefore substantially bolstered the prosecution's case.

The Texas habeas court held that the decision not to make a Confrontation Clause objection was the result of a considered trial strategy on the part of Wright's trial counsel. The court held that it was "reasonable to speculate" that defense counsel "realized that they could not vouch for the reliability of the statements [that Adams owned the murder weapon] and then object to the introduction of the remainder of the statements under the confrontation clause."

The district court did not address this ground for the Texas court's decision.[9] The district court instead reasoned that the state court could reasonably have concluded that Wright could not establish that he was prejudiced by his counsel's failure to make a Confrontation Clause objection due to the overwhelming evidence establishing that Wright murdered Vick. *Wright*, 2004 WL 438941,

---

[9] In applying the "unreasonable application" test of 28 U.S.C. § 2254(d), a federal court reviews only the state court's ultimate decision that the petitioner is not entitled to relief, not the state court's reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc).

at *23.

In light of AEDPA's deferential standard of review, we decline to grant a COA on this issue because, assuming *arguendo* that the objection would have been sustained and the testimony excluded, it is not debatable amongst jurists of reason that the state court could have reasonably concluded that Wright cannot demonstrate that he was prejudiced by his counsel's failure to object. First, in its closing statement, the prosecution did not rely on Adams's hearsay statement that he gave one of the murder weapons to Wright. Second, and more significantly, there was overwhelming evidence establishing that Wright personally, and most likely in conjunction with Adams, attacked Vick. At the scene of the crime, the police found Wright's bloody fingerprint next to the body and his blood on a towel. Immediately following Vick's death, Wright was seen driving Vick's car and trading her belongings for drugs. His blood was found on the steering wheel. At Wright's shack, the police recovered a pair of blue jeans with gold paint[10] and Vick's bloodstains in Wright's shack. Wright was a known inhaler of gold spray paint. Finally, the police recovered two knives with Vick's blood, one from near Wright's shack.

C

Finally, Wright argues that the prosecution suppressed the following evidence in violation of the Fourteenth Amendment and *Brady v. Maryland*: 1) that the State had agreed not to prosecute Llewellyn Mosley in exchange for his testimony; 2) that Adams had confessed to the murder to Jerry Causey at Mosley's house; 3) the tape of the 911 call Daniel McGaughey made reporting that Adams

---

[10] Wright submitted an affidavit to the district court from his state trial attorney, which states that the jeans were too small for Wright. Wright's attorney used the jeans for demonstrative purposes while presenting this argument to the jury. The jury could infer, however, that the gold spray paint sufficiently linked the jeans to Wright, a known user of spray paint as an inhalant.

-11-

wanted to turn himself in; 4) police notes recording a statement by Daniel McGaughey to the police concerning Adams; and 5) evidence that the police found papers belonging to Adams in the shack.

The district court rejected each of these claims on several grounds. The court first noted that Wright had procedurally defaulted his *Brady* claims. *Wright*, 2004 WL 438941, at *6. Despite holding that these claims were procedurally defaulted, the district court proceeded to consider and reject them on their merits. *Id.* at *16-*20. The district court held that Wright failed to establish that the prosecution suppressed any agreement with Mosley, Adams's confession to Causey, the 911 tape, or Adams's papers. *Id.* In the alternative, the court held that none of this evidence was material. *Id.*

1

Wright does not dispute that his *Brady* claims are procedurally defaulted. He argues, however, that we should nevertheless consider the merits of these claims because he is actually innocent of the crime. *See House v. Bell*, 126 S.Ct. 2064 (2006); *Schlup v. Delo*, 513 U.S. 298 (1995).

To establish actual innocence under *Schlup*, Wright must demonstrate that in light of all the evidence, including that "tenably claimed to have been wrongly excluded or to have become available only after trial," *id*. at 328, "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt," *id*. at 327.

The district court summarized Wright's evidence of actual innocence as follows:

> 1) exculpatory scientific evidence regarding the bloody fingerprint found at the crime scene; 2) affidavits from Petitioner's two defense attorneys averring that the jeans that the State contended that Petitioner wore when he murdered the victim were in actuality too small for him; 3) an affidavit from Daniel McGaughey, who was 'hidden' from the defense; 4) an affidavit from Jerry Causey, a man to whom co-defendant Adams allegedly confessed; 5) an affidavit from another inmate to whom Adams allegedly confessed; and 6) testimony from Adams' subsequent capital murder trial which undermines the testimony of State's witness Llewellyn Mosley.

-12-

*Wright*, 2004 WL 438941, at *7.

The district court held that this evidence did not satisfy the *Schlup* standard. *Id.* at *9. In particular, it noted that although much of this evidence was "newly presented," most of it was available at the time of trial. *Id. at* *7-*8. The affidavits from Wright's defense attorneys regarding the size of the bloody jeans was not new because those attorneys had made the same argument to the jury in their closing statements. *Id*. at *7. The affidavit of Daniel McGaughey, who called 911 on Adams's behalf, did not differ from statements McGaughey made to the police that were disclosed. *Id.* at *8. And there was simply no evidence, new or old, that undermined Mosley's testimony. *Id.* The district court found the remaining evidence insufficiently persuasive to meet the *Schlup* standard. *Id*. at *9.

In this motion, Wright argues that the district court erred in requiring him to present "new" evidence. The courts of appeals disagree as to whether *Schlup* requires "newly discovered" evidence or merely "newly presented" evidence. *Compare Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir. 2005) ("Evidence is only new if it was 'not available at trial and could not have been discovered earlier through the exercise of due diligence.' " (quoting *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001)), *and Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004) (requiring new evidence that was not available at the time of trial), *with Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003) ("All *Schlup* requires is that the new evidence is reliable and that it was not presented at trial."), *and Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003) (requiring "newly presented," not newly available evidence). Neither party cites controlling case law from this court. We, however, need not address this circuit split or determine whether Wright has established actual innocence because he has not demonstrated that jurists of reason would find the merits of his *Brady* claims debatable. *Cf.*

*Lucas v. Johnson*, 132 F.3d 1069, 1078 (5th Cir. 1998) (assuming arguendo that petitioner had satisfied *Schlup* and considering claim on the merits)

2

The suppression of evidence favorable to the accused violates due process where that evidence is material to guilt or punishment. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). This duty to disclose extends to both impeachment and exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). Evidence is suppressed when the prosecution fails to disclose it even when it is known only to police investigators but not the prosecutor. *Kyles*, 514 U.S. at 438. Evidence is "material" when its suppression creates a reasonable probability of a different result. *Id*. at 433. The materiality of all suppressed evidence must be considered cumulatively. *Id*. at 437.

Assuming Wright's *Brady* claims are not procedurally defaulted, a federal court must apply a *de novo* standard of review. *Solis v. Cockrell,* 342 F.3d 392, 394 (5th Cir. 2003) (holding that review is *de novo* where there has been no adjudication on the merits in state court); *Henderson v. Cockrell*, 333 F.3d 592, 598 (5th Cir. 2003) (same); *Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000) (same); *Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir. 2000) (same).

The district court held that Wright had failed to establish that the State suppressed evidence of an agreement not to prosecute Mosley, that Adams confessed to Jerry Causey, that the police found letters addressed to Adams in the shack, or the tape of the 911 call by Daniel McGaughey reporting Adams's desire to turn himself in. Wright does not argue that the district court's findings or conclusions of law with respect to whether the State suppressed this evidence are in error. He has therefore failed to establish that the district court's resolution of these claims is reasonably debatable.

Wright does argue that the prosecution failed to disclose timely a police note made during an

-14-

interview with Daniel McGaughey. McGaughey was working at a video store when Adams informed him that he wanted to turn himself in. According to the police note, McGaughey told police that Adams stated, "I murdered someone in DeSoto and I can't deal with it." The prosecution did not disclose this note until after Wright's trial began.[11] Although the prosecution's disclosure of this note was delayed, Wright conceded in his petition for habeas corpus that he was timely provided with the following nearly identical written statement by McGaughey:

> At about 7:00 pm on Saturday March 22nd, a man came and asked me to call the police. I asked why and he told me there was a murder and he wanted to turn himself in. I asked him where this murder took place and he got real angry. He told me it took place in DeSoto and and [sic] could not live with himself any longer to call the police give them his description and he would be out by the curb.

The district court held that the suppressed note was not material. *Wright*, 2004 WL 438941, at *19. We hold that this conclusion is not reasonably debatable. The allegedly suppressed note is merely an abbreviated version of the more complete and lengthy account of Adams's confession that Wright timely received. Wright fails to explain what additional use he could have made of a second document containing the same statement McGaughey gave to the police.

III

For the foregoing reasons, we DENY Wright's motion for a COA.

---

[11] So long as the defendant receives the evidence in time for its effective use at trial, the Due Process Clause is not violated. *United States v. Walters*, 351 F.3d 159, 169 (5th Cir. 2003) (collecting cases). Although Wright received this evidence during the course of the trial and appears to have had the opportunity to put it to use, the State does not dispute that the evidence was suppressed.