United States Court of Appeals
Fifth Circuit

**F I L E D**

May 10, 2007

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

————————————

No. 06-70033

————————————

KARL EUGENE CHAMBERLAIN,

Petitioner-Appellant,

versus

NATHANIEL QUARTERMAN,
Director, Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent-Appellee.

————————————————————————————

Appeal from the United States District Court
for the Northern District of Texas
3:01-CV-388

————————————————————————————

Before JOLLY, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:*

The district court denied Karl Chamberlain's petition for writ of habeas corpus brought

pursuant to 28 U.S.C. § 2254, in which Chamberlain challenged his capital murder conviction and

death sentence. Chamberlain requests a certificate of appealability ("COA") on his ineffective

assistance of counsel claims. We DENY Chamberlain's request for COA.

_____

*Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

- 1 -

## I. FACTS AND PROCEEDINGS

Felicia Prechtl was murdered on August 2, 1991. That day, she had arranged for her brother and his girlfriend to babysit her young son so that she could go out with her friends in the evening. Around 6:00 p.m., Prechtl's brother and his girlfriend departed with Prechtl's son to go to the grocery store, leaving Prechtl to get ready. When they returned to Prechtl's apartment, they noticed that the bathroom door was closed and that Prechtl's clothes were still in the hallway. Eventually, Pretchl's brother entered the bathroom and saw Prechtl lying face down, with her jeans and underwear pulled down to her knees, and her wrists and ankles bound by duct tape. She was otherwise wearing no clothing, and blood was pooled around her head.

An autopsy determined the cause of death to be a gunshot wound to the head. The trajectory of the bullet was consistent with Pretchl sitting on the toilet or kneeling on the floor. A .30 caliber cartridge was recovered. A rape examination found sperm in Prechtl's anal cavity, and a specimen was preserved as evidence. A roll of duct tape was also collected as evidence. Fingerprints from the duct tape were submitted for comparison with records in the police department's database, but no matches materialized.

Five years later, in 1996, the fingerprints were resubmitted for comparison, and several potential matches were identified, among them those of Chamberlain. Chamberlain had lived in the same apartment complex as Prechtl at the time of the murder. On July 17, 1996, he was arrested. Detective Kenneth Penrod interviewed Chamberlain, and Chamberlain provided a written statement to the police that he had killed Prechtl. According to the statement, he had been drinking on the day of the murder and went to Prechtl's apartment to borrow some sugar. He claimed that, when she answered the door, she was scantily dressed and that she gave him the sugar and told him to leave.

He stated that, while preparing to take his dogs for a walk, he decided to return to Prechtl's apartment and did so with duct tape and a rifle. He claimed that he had consensual anal intercourse with her but shot her after she threatened to tell his wife. He stated that, afterwards, he took his dogs for a walk. In the interview, Chamberlain alerted the police that the rifle could be found at his father's house. Chamberlain also provided samples of blood that were used to match the DNA profile from the sperm collected.

In 1997, a jury found Chamberlain guilty of capital murder and sentenced him to death. The case was appealed to the Texas Court of Criminal Appeals, and the court affirmed. *See Chamberlain v. State*, 998 S.W.2d 230 (Tex. Crim. App. 1999). Chamberlain petitioned for a writ of certiorari, but the Court denied the petition. *Chamberlain v. Texas*, 528 U.S. 1082 (2000). Chamberlain filed a state habeas petition that was denied in an unpublished order in September 2000. In 2001, Chamberlain filed a federal habeas petition, which was denied in November 2005. The district court also denied Chamberlain a COA on his claims. Chamberlain now requests a COA before this court on his ineffective assistance of counsel claims.

## II.  STANDARD OF REVIEW

Because this appeal arises from a federal habeas petition filed in 2001, after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), AEDPA applies to Chamberlain's claims. *See Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002). This court will grant a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude

the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The Supreme Court has emphasized that determining whether a COA should issue is a threshold inquiry and that "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 342. At this stage, we do not conduct a full investigation into the factual and legal bases for each claim but instead "conduct an overview of the claims and a general assessment of their merits." *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). Because the petitioner is subject to the death penalty, any doubts as to whether a COA should issue must be resolved in the petitioner's favor. *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

We recognize that the district court's review of Chamberlain's claims was subject to the standard imposed by AEDPA. A federal court may not issue a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)).

### III. DISCUSSION

The Sixth Amendment right to counsel entitles the defendant to "a reasonably competent attorney, whose advice is within the range of competence demanded of attorneys in criminal cases." *United States v. Cronic*, 466 U.S. 648, 655 (1984) (internal quotation omitted). To succeed on an ineffective assistance claim, Chamberlain must demonstrate that (1) his counsel's performance "fell below an objective standard of reasonableness" and (2) that the "deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Prejudice to the defense

- 4 -

means that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. There is an initial presumption that counsel's decisions are reasonable. *Id.* at 689. Deficient representation occurs when "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

> As we have said,

> It bears repeating that the test for federal habeas purposes is *not* whether [the petitioner] made that showing [under *Strickland*]. Instead, the test is whether the state court's decision—that [the petitioner] did *not* make the *Strickland* showing—was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his [ineffective assistance of counsel] claim.

*Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003). Additionally, an ineffective assistance of counsel claim is a mixed question of law and fact, and under AEDPA, a state's factual findings are presumed correct unless rebutted by the petitioner with clear and convincing evidence. *Kitchens v. Johnson*, 190 F.3d 698, 700–01 (5th Cir. 1999).

Chamberlain argues that his Sixth Amendment right to counsel was violated by virtue of ineffective assistance of counsel during three stages: (1) the plea bargaining stage, (2) the guilt-innocence phase of the trial, and (3) the punishment phase of the trial.

## A.    Ineffective assistance during plea bargaining

Chamberlain argues, as he did before the district court, that his trial counsel was ineffective for failing to adequately explain the plea bargain that the state had offered. Under the plea bargain offered by the state, Chamberlain would plead guilty to murder and burglary and receive two stacked life sentences. Chamberlain alleges that he was dissuaded from accepting the plea offer because of his counsel's representations about how long he would spend in jail and whether he would be paroled.

According to Chamberlain, no competent counsel would make predictions about the length of time a defendant could spend in jail or the possibility of a defendant's parole.

While the state habeas court did not issue its own written opinion, it adopted various factual findings and conclusions of law. Among them, the court determined that Chamberlain's attorney at that time, Rick Magnis, told Chamberlain that, if he accepted the plea, he would not be eligible for parole for thirty years. The court found this calculation to be correct. According to the findings, Magnis told Chamberlain that he might never be paroled and that he could not predict how long Chamberlain would spend in prison because of the seriousness of the offense. The court found that Magnis correctly told Chamberlain that only the Board of Pardon and Paroles could ultimately decide when, or if, Chamberlain would be paroled. Based on an affidavit submitted by Magnis, the court determined that Magnis had another attorney with experience in death penalty cases explain the plea offer to Chamberlain as well. The court concluded that Chamberlain opted not to accept the plea offer and that Magnis rendered effective assistance of counsel by frankly advising Chamberlain that he might never be paroled.

"In determining whether or not to plead guilty, the defendant should be made aware of the relevant circumstances and likely consequences so that he can make an intelligent choice." *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995). Generally, the failure of defense counsel to inform the defendant about a plea bargain amounts to ineffective assistance of counsel. *Id*. Here, Chamberlain was made aware of the plea offer, and both his defense counsel and another experienced attorney advised him about the possible consequences of accepting the plea offer. Though Chamberlain argues that his attorney should not have made predictions about the possibility of parole, the state court's factual findings show that Magnis told Chamberlain that only the Board of Pardon and Paroles could

ultimately decide about Chamberlain's parole. Chamberlain was not misled by his attorney, and if he was dissuaded from accepting the plea because of the potential length of the prison term, it was Chamberlain's choice to decline the plea offer.

The federal district court determined that Chamberlain failed to demonstrate that the state habeas court was unreasonable in finding his counsel's assistance effective. We agree with the district court that the state court's conclusion that the performance of Chamberlain's attorney was not deficient was a reasonable application of *Strickland*. We hold that jurists of reason would not find the district court's resolution of this claim debatable or wrong.

**B.      Ineffective assistance during the guilt-innocence phase of trial**

Chamberlain had new counsel at trial, Wayne Huff and Doug Parks. Before the state habeas court, Chamberlain argued that his attorneys provided ineffective assistance because they failed to call any fact witnesses during the guilt-innocence phase of the trial. The state habeas court determined that, because Chamberlain confessed to the crime and because there was overwhelming corroborative evidence of his guilt, it was a reasonable trial strategy for defense counsel to decline to present witnesses. The court also noted that Chamberlain failed to demonstrate that there were any witnesses who could have testified on his behalf.

In federal district court, Chamberlain argued that his attorneys provided ineffective assistance because they failed to call any fact witnesses, and specifically, Chamberlain himself. He claims that, if he had been put on the witness stand, he could have testified that the statement in which he confessed to the crime was not entirely in his own words. Chamberlain argues that, because his confession statement reflected a violent and unprovoked murder, he should have testified in order to establish that the statement was partially crafted by the detective to whom he spoke. In response, the

Director contends that Chamberlain's claim that he received ineffective assistance because he was not put on the witness stand is procedurally defaulted.

The federal district court determined that Chamberlain's claim was procedurally barred because he did not raise it before the state habeas court; the district court also found that, even if the claim were not procedurally barred, it would fail on the merits. Our task at this stage is only to determine whether Chamberlain's claim deserves encouragement to proceed further. *See Miller-El*, 537 U.S. at 327 ("A petitioner satisfies [the COA standard] by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."). Accordingly, because we agree with the district court that Chamberlain's claim fails on the merits, we will assume without deciding that his claim was not procedurally defaulted.

Chamberlain argues that his counsels' strategy to not put him on the witness stand during the guilt-innocence phase was unreasonable. However, in addition to the signed confession, the prosecution had strong corroborating evidence of his guilt, including fingerprint matches, DNA evidence, and a rifle cartridge. With such strong evidence of guilt, trial counsel may have decided that, as a matter of strategy, it would be futile to place Chamberlain on the witness stand and to do so would also have exposed him to damaging cross-examination. Both the state habeas court and the federal district court observed that the focus of trial counsels' efforts, because of the overwhelming evidence of guilt, was not on the guilt-innocence phase of the trial but instead on the punishment phase. The state habeas court concluded that, because of the overwhelming evidence of guilt, Chamberlain could not show that his counsels' performance in not putting him on the witness stand during the guilt-innocence phase fell below an objective standard of reasonableness and

prejudiced his defense. We hold that the state habeas court's conclusion was a reasonable application of *Strickland* and that jurists of reason would not find the resolution of this claim debatable or wrong.

**C.** **Ineffective assistance during the punishment phase of trial**

Finally, Chamberlain argues that he received ineffective assistance of counsel during the punishment phase because his attorneys did not call him as a witness to testify as to his remorse. Chamberlain acknowledges that the jury heard evidence of his remorse from other sources but contends that a jury could not be convinced about his remorse without hearing from him directly.

The state habeas court determined that it was a reasonable strategy to advise Chamberlain against testifying. The court noted that defense counsel called twenty-one witnesses during the punishment phase, including Chamberlain's parents, a former therapist, and sixteen friends. Each of Chamberlain's friends testified that he had never acted in a dangerous manner in their presence. Chamberlain's former therapist testified that, during their sessions, Chamberlain admitted to his involvement in the murder and that Chamberlain was "seeking forgiveness in some way." The therapist stated that, when he instructed Chamberlain to address an empty chair as if Prechtl were there, Chamberlain was "grief-stricken" and expressed sorrow for both Prechtl and her son. A former Alcoholics Anonymous sponsor testified that Chamberlain admitted having committed the crime to him and that Chamberlain was "very regretful" and concerned in particular about Prechtl's son. The AA sponsor stated that he believed that Chamberlain was being genuine. Through these witnesses, defense counsel presented evidence of Chamberlain's remorse. The state habeas court concluded that it was a reasonable trial strategy to use these witnesses and to advise the defendant against testifying so as not to expose him to cross-examination. The court also noted that the ultimate decision

whether or not to testify was Chamberlain's.

Where defense counsel's decision concerning which witnesses to place on the stand during the punishment phase reflects a sound tactical strategy, a court will not find ineffective assistance of counsel. *See Boyle v. Johnson*, 93 F.3d 180, 187–88 (5th Cir. 1996). The state habeas court determined that Chamberlain had not demonstrated that his defense counsel's advice against testifying constituted ineffective assistance. In light of the evidence presented in the state court proceeding, we hold, as the district court also found, that the decision of the state habeas court was not based on an unreasonable application of the *Strickland* standard. Jurists of reason would not find the district court's resolution of this claim debatable or wrong.

## IV. CONCLUSION

This court may not grant a COA if there is no doubt that reasonable jurists would agree with the district court's resolution and that the issues presented are not adequate to deserve encouragement to proceed further. Chamberlain's request for a COA is DENIED.