# UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

_____

No. 08-11023

_____

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 29, 2008

Charles R. Fulbruge III
Clerk

In Re: GREGORY EDWARD WRIGHT

Movant,

_____

On Motion for Authorization to File
Successive Petition for Writ of Habeas
Corpus in the United States District Court
for the Northern District of Texas, Houston

_____

Before SMITH, GARZA, and PRADO, Circuit Judges.

PER CURIAM:

Gregory Edward Wright ("Wright") is scheduled to be executed on October 30, 2008. Wright moves pursuant to 28 U.S.C. § 2244(b) for authorization to file a successive petition for writ of habeas corpus in the district court. He contends that new evidence demonstrates his actual innocence. For the following reasons, we deny Wright's motion.

A Texas jury convicted Wright of capital murder for the 1997 stabbing death of Donna Vick. Prisoner John Wade Adams ("Adams") was separately convicted of the same offense. Both Wright and Adams have acknowledged their

presence at Vick's house on the night of the crime; however, each man has consistently maintained that the other is solely responsible for the killing. In 2006, we rejected Wright's original habeas application containing claims of his actual innocence. Wright v. Quarterman, 470 F.3d 581 (5th Cir. 2006).

In July and August of 2008, Adams unexpectedly sent several letters claiming sole responsibility for the murder and revoking his earlier accusations against Wright. On the basis of these letters, Wright sought permission to file a successive habeas application in state court. The Court of Criminal Appeals (CCA) granted this request and remanded to the state district court to investigate Wright's claim. At the trial court hearing, Adams confessed that his recent letters were false and written for the purpose of delaying Wright's execution so that Wright could spend more time with his wife. The trial court determined that the letters were not credible and denied Wright's application. The CCA affirmed on October 28, 2008.

As Wright's first successive state application was pending, Wright sought further DNA testing on the "Umen jeans"—a key piece of evidence at his trial. On September 29, 2008, the results of this testing were released. The testing confirms that a DNA profile consistent with the DNA of Adams was present on the interior left thigh of the Umen jeans. Wright sought permission to file a second successive habeas application in state court on this basis. The CCA

dismissed this second application as an abuse of the writ.

Wright now moves this Court for authorization to file a successive federal habeas petition. He contends that the DNA testing and the letters from Adams entitle him to file a successive application pursuant to 28 U.S.C. § 2244(b)(2)(B).

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this court may authorize a second or successive habeas corpus application only "if it determines that the application makes a prima facie showing that the applicant satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C). To obtain authorization to file a successive claim, Wright must make a prima facie showing that:

> (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

§ 2244(b)(2)(B). A prima facie showing is "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." In re Morris, 328 F.3d 739, 740 (5th Cir. 2003) (quoting Bennett v. United States, 119 F.3d 468, 469 (7th Cir. 1997)). "If it is 'reasonably likely' that the motion and supporting documents indicate that the application meets the 'stringent' requirements for the filing of a successive petition, then we must grant

authorization to file the petition." In re Henderson, 462 F.3d 413, 415 (5th Cir. 2006). Thus, Wright must show that it is "reasonably likely" that he can present a clear-and-convincing case that no reasonable jury could have convicted him of the murder. See § 2244(b)(2)(B)(ii).

Wright points to two possible bases for this showing. First, he contends that Adams' letters excusing Wright of any participation in the murder demonstrate Wright's actual innocence. However, the state court conducted a hearing and expressly found the allegations in these letters to be "false," given that Adams subsequently admitted to writing them as a favor to Wright. We presume that a state court's factual findings are correct unless an applicant presents clear-and-convincing evidence to the contrary. See 28 U.S.C. § 2254(e)(1). As Wright makes no attempt to pinpoint any error in the state court's finding, we conclude that the letters are false and not persuasive as to Wright's innocence.

Second, Wright points to the recent DNA results indicating that a profile consistent with Adams' DNA was present on the inside leg of the Umen jeans. The Umen jeans were originally found covered in the victim's blood. At Wright's trial, the State argued that Wright wore the jeans while straddling and stabbing the victim. Thus, the recent profile match clearly favors Wright to some degree, as it renders it more probable that Adams wore the jeans at some point.

However, the profile match does nothing to resolve who wore the jeans at the time of the murder. The jeans were found at a shack belonging to both suspects, and were flecked with gold paint in a manner consistent with other clothing belonging to Wright. Furthermore, the cumulative DNA results overwhelmingly suggest that Wright wore the jeans at some point.[1] Thus, the recent profile match with Adams is of limited utility.

Even assuming arguendo that Adams wore the jeans at the time of the murder, there is still substantial evidence that Wright actively participated in the stabbings.[2] (1) A medical examiner at Wright's trial testified that the victim could have been stabbed by more than one knife, and the police found two separate knives with the victim's blood on them. (2) A note with the question "Do you want to do it?" was found in the victim's house with Wright's fingerprint on it. (3) On the night of the murder, Wright and Adams were later seen together in the victim's car trading the victim's property for drugs. (4) Wright's

---

[1] For example, according to a DNA report released on September 30, 2008, Wright's DNA was consistent with a DNA mixture found on the inner-crotch area of the jeans. The frequency of the occurrence of this mixture is 1 in 1276 Caucasian men. Adams was excluded as a contributor.

[2] Despite Wright's contentions to the contrary, the prosecution never argued that Wright was the sole participant in the stabbings. See Wright, 470 F.3d at 584 (5th Cir. 2006) (noting that "the prosecution argued that both Adams and Wright attacked Vick"). Although the trial court did not give a charge on the law of parties, the jury could have convicted Wright under the belief that both he and Adams participated in the stabbing.

blood was found on the steering wheel of the victim's car. (5) Wright cannot be

excluded as contributor to the DNA profile found on the victim's fingernails, a

profile that appears in 3 out of every 1276 Caucasian males. (6) At the time of

his arrest, Wright had what appeared to be fingernail scratches on his back and

shoulder. (7) Finally, an expert witness testified that a bloody partial

fingerprint found on the victim's pillowcase matched Wright's fingerprint. See

also Wright, 470 F.3d at 584, 589–90 (5th Cir. 2006) (summarizing the evidence

against Wright). Given the weight of this evidence, the impact of the DNA

profile is minimal.

In sum, the cumulative effect of the DNA testing and Adams' letters

cannot possibly amount to clear-and-convincing evidence that no reasonable jury

could have convicted Wright of the murder. Wright has failed to make the

threshold showing of innocence necessary to file a subsequent application

pursuant to § 2244(b)(2)(B)(ii). Accordingly, we need not consider the merits of

Wright's underlying claims for habeas relief.[3]

---

[3]Nonetheless, we note that Wright's claims are dubious. Wright first contends that he is entitled to relief under a freestanding actual-innocence claim. However, it is settled in this Circuit that "actual innocence is not an independently cognizable federal-habeas claim." Foster v. Quarterman, 466 F.3d 359, 367–68 (5th Cir. 2006). Wright next contends that the new evidence of his innocence should allow him to pass through the "gateway" and raise several other constitutional claims. However, it appears that Wright raised all of these "gateway" claims in his original habeas application. See Wright v. Dretke, 2004 WL 438941, *6–*31 (N.D. Tex. 2004) (summarizing Wright's habeas claims). According to 28 U.S.C. 2244(b)(1), a "claim presented in a second or successive habeas corpus application under section 2254 that

For the foregoing reasons, Wright's motion for authorization to file a successive habeas corpus petition is DENIED.  His motion for stay of execution is also DENIED.

---

was presented in a prior application shall be dismissed."  Thus, Wright's claims would be barred.